WHIPPLE, J.
 

 |-.In this workers’ compensation case, the defendant employer appeals a judgment of the Office of Workers’ Compensation Administration (OWC) in favor of the claimant employee, awarding weekly indemnity and medical benefits and assessing penalties and attorney’s fees against the defendant employer. For the following reasons, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 On November 6, 2003, Bobby Clark was injured while in the course and scope of his employment with Godfrey Knight Farms, a business operating a sugar cane farm. Clark, a mechanic and a twenty-year employee of Godfrey Knight Farms, was injured when he and his boss, Godfrey Knight, were attempting to hook a row-covering tool to a tractor. Knight was attempting to align the tractor with the tool when he accidently backed the tractor into Clark, “mash[ing]” Clark between the tractor and the tool. According to Clark, Knight, in an apparent attempt to put the tractor in neutral, then moved the tractor backward and forward two or three times, causing the tractor tires to repeatedly hit Clark in the back and legs.
 

 Clark attempted to continue working that day, but eventually he went home due to pain in his back and legs. By that evening, Clark’s pain had gotten progressively worse, and Knight scheduled an appointment for Clark with Dr. John Soignet the following day. Dr. Soignet saw Clark on three occasions in the following six weeks and recommended a lumbar MRI, After receiving the results of the MRI, he recommended that Clark see an orthopedic specialist.
 

 | ¡¡Clark then began treatment for this injury with Dr. William Kinnard, an orthopedic surgeon, who had previously treated
 
 *288
 
 Clark.
 
 [1]
 
 While initially Clark’s primary complaint was of lower back and leg pain, he also complained of pain in his neck and hands following the November 6, 2003 accident. Dr. Kinnard was of the opinion that Clark had aggravated a pre existing lower back condition, and he referred Clark to physical therapy. Dr. Kinnard continued to treat Clark conservatively for his complaints, and he restricted Clark from work during this time. Thus, LUBA Casualty Insurance Company (“LUBA”), Godfrey Knight Farms’ workers’ compensation carrier, paid Clark temporary total disability benefits.
 

 Because Clark’s pain persisted, on September 1, 2004, Dr. Kinnard referred Clark to Dr. Donald Dietze, Jr., a neurosurgeon, for a neurosurgery opinion regarding Clark’s lower back pain. After examining Clark and reviewing lumbar x-rays and MRI reports, Dr. Dietze opined that Clark most likely had injured his previously operated L5-S1 disc and was suffering from segmental instability. Dr. Dietze recommended a lumbar discogram to confirm the diagnosis, noting that if the discogram was positive, Clark would be a candidate for lumbar surgery. Dr. Kin-nard agreed with Dr. Dietze that a disco-gram was indicated. However, this diagnostic test was not approved by LUBA.
 

 |4On April 8, 2005, at the request of LUBA, Clark was also examined by Dr. Robert Applebaum, a neurosurgeon, who recommended an MRI of the cervical spine and cervical and lumbar myelograms with CAT scans. Dr. Kinnard was also in agreement with performing these diagnostic tests. However, LUBA would not authorize these diagnostic tests either.
 

 With regard to Clark’s neck and arm pain, Dr. Kinnard noted that by June 2004, Clark’s neck was becoming the predominant area of complaint. Dr. Kinnard opined that Clark’s current neck problems were causally related to the November 6, 2003 accident, which he believed aggravated or re-injured Clark’s pre-existing neck problems.
 

 Dr. Kinnard further explained that while EMG studies performed after the 2001 and 2003 accidents showed essentially the same abnormalities, a follow-up MRI revealed evidence of a worsening area of compression of the spinal cord at C3-C4, C4-C5, and C5-C6. Thus, eventually in May 2007, Dr. Kinnard recommended that Clark undergo an interior cervical discectomy and fusion. Dr. Kinnard opined that the November 6, 2003 accident aggravated Clark’s pre-existing condition and caused more degeneration to the point that Clark now needed cervical surgery. LUBA, however, did not authorize the cervical surgery.
 

 Regarding Clark’s complaints of current and past pain in his arms and hands, Dr. Kinnard diagnosed carpal tunnel syn
 
 *289
 
 drome, and he recommended carpal tunnel release surgery. However, LUBA also would not authorize this medical treatment. In March 2006, Clark underwent a left carpal tunnel release, paid for by his private health insurance, but as of the time of trial of this matter, he had not yet undergone a right carpal tunnel release.
 

 On November 6, 2006, Clark filed a Disputed Claim for Compensation against Godfrey Knight Farms and LUBA, contending that |5defendants had wrongfully denied authorization for the above-listed medical treatment and had refused to pay for prescription medication. Thus, Clark sought authorization for recommended medical treatment, payment for prescription medication, and penalties and attorney’s fees.
 

 Thereafter, LUBA reduced Clark’s weekly indemnity benefits, effective November 1, 2006, from temporary total disability benefits (TTDs) to supplemental earnings benefits (“SEBs”), contending that Clark’s treating physician had approved certain jobs for him. Clark then filed several amended claims, averring that defendants had wrongfully reduced his indemnity benefits and had failed to reimburse him for mileage expenses and specifying the medical treatment for which authorization was sought.
 

 Trial in this matter was held on January 30, 2008, and at the close of defendants’ case, defendants moved to amend their answer to assert a claim for LSA-R.S. 23:1208 fraud. Defendants contended that Clark’s testimony at trial, which they alleged differed from his prior deposition testimony, and Dr. Kinnard’s deposition testimony raised the issue of whether Clark had been truthful about his prior cervical problems, thus giving rise to a claim of fraud. The workers’ compensation judge granted defendants’ motion to so amend their answer, noting that even if she allowed the expansion of the pleadings, she was not bound to find that defendants had established a 1208 fraud claim. The workers’ compensation judge further reopened the hearing to allow Clark to present any evidence he wished to rebut the 1208 fraud defense.
 

 Thereafter, on June 3, 2008, the workers’ compensation judge rendered oral reasons for judgment, finding that defendants had failed to establish that Clark had violated LSA-R.S. 23:1208 by willfully making a false statement or representation for the purpose of obtaining workers’ | ^compensation benefits. The workers’ compensation judge further found as a fact that Clark had proven that the November 6, 2003 work accident aggravated his preexisting back, leg, neck, and bilateral carpal tunnel conditions and that the aggravation of those conditions was continuing as of the date of the judgment. Thus, she found that Clark had proved his entitlement to temporary total disability benefits. Additionally, the workers’ compensation judge found that Clark had proven his entitlement to all medical treatment recommended and to reimbursement for prescriptions and mileage.
 

 With regard to the issue of penalties and attorney’s fees, the workers’ compensation judge found as a fact that, while Clark proved his entitlement to these benefits, defendants were not arbitrary, capricious or without probable cause in reducing Clark’s indemnity benefits from TTDs to SEBs or in denying authorization for treatment and surgeries for Clark’s carpal tunnel syndrome. However, the workers’ compensation judge further concluded that defendants did not reasonably controvert Clark’s entitlement to medical treatment for his cervical problems and to the lumbar discogram. Accordingly, the worker’s compensation judge assessed penalties in the amount of $4,000.00 ($2,000.00 for each
 
 *290
 
 incident) and attorney’s fees in the amount of $7,500.00 against defendants for their failure to authorize that medical treatment.
 

 From a judgment rendered in accordance with these findings, Godfrey Knight Farms appeals, contending that the workers’ compensation judge erred in: (1) failing to follow the provisions of LSA-R.S. 23:1208; (2) awarding temporary total disability benefits instead of supplemental earnings benefits; (8) authorizing carpal tunnel surgery on both wrists; (4) 17authorizing neck surgery for Clark; (5) approving a discogram; and (6) awarding penalties and attorney’s fees.
 

 FINDING OF NO LSA-R.S. 23:1208 FRAUD
 

 (Assignment of Error No. 1)
 

 In this assignment of error, God-frey Knight Farms contends that the workers’ compensation judge erred in finding that defendants had failed to carry their burden of proving a violation of LSA-R.S. 23:1208 and, thus, in not dismissing Clark’s claim in its entirety. Specifically, Godfrey Knight Farms contends that in a statement to the employer and in his deposition, Clark denied that he had ever had any previous neck injury and that Clark also failed to admit at trial that he had any previous injuries to his neck and wrists.
 

 Pursuant to LSA-R.S. 23:1208, an employee who makes a false statement for the purpose of obtaining workers’ compensation benefits shall forfeit any right to compensation benefits. The requirements for forfeiture of benefits under section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining any benefit or payment.
 
 Hull v. Flulcer Farms,
 
 2000-0757 (La.App. 1st Cir.5/11/01), 787 So.2d 535, 539,
 
 writ denied,
 
 2001-2291 (La.11/16/01), 802 So.2d 612. However, the burden of proof under LSA-R.S. 23:1208 requires more than a mere showing of inconsistent statements or inadvertent admissions by the claimant.
 
 Bernard v. Petro Stopping Centers,
 
 2007-0387 (La.App. 1st Cir.11/2/07), 977 So.2d 49, 54,
 
 writ denied,
 
 2008-0100 (La.3/7/08), 977 So.2d 917. Rather, there must be a showing that a misrepresentation was willfully made for the purpose of obtaining benefits.
 

 The issue of whether an employee forfeited workers’ compensation benefits by willfully making false statements is one of fact, which should not | sbe reversed on appeal absent manifest error.
 
 Bernard,
 
 977 So.2d at 54. When findings are based on a credibility determination, a factfin-der’s decision to credit the testimony of one of two or more witnesses can virtually never be manifestly erroneous. Moreover, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous
 
 Hull,
 
 787 So.2d at 539-540.
 

 In the instant case, Clark gave a statement to a representative of LUBA on March 16, 2004, approximately four months after the work accident in question. When questioned about whether he had experienced any problems or injuries with his neck, back, leg, or shoulders prior to the accident in question, Clark responded that he had had back surgery as a result of the 2001 work accident. The next question presented to Clark was as follows: “How about the neck or the shoulders or the—no problems ever before with those. That back surgery was that an accident, as a result of an accident?” To this multipart question, Clark responded, “Yea.” The LUBA representative then asked Clark if he had recovered completely from that surgery, and Clark responded, “I did everything I was doing before.”
 

 
 *291
 
 Clark was then asked how he felt on the day that the instant work accident occurred, November 6, 2003, and Clark responded that he felt good that day and felt like he was “100%.” When later asked whether he had any shoulder or neck pain when he reported to work on November 6, 2003, Clark related that he did not have any shoulder or neck pain that day.
 

 Later in that statement, when asked if he had ever had any stiff or sore neck symptoms before the accident in question, Clark responded that he had not. However, when Clark was thereafter asked about any previous neck injury in that same statement, the following exchange occurred:
 

 IsQ Ever suffered from or been treated for injuries or problems of any kind involving your neck or shoulders?
 

 A (unintelligible).
 

 Q Did it require medical treatment?
 

 A (Unintelligible).
 

 While it is unclear from the transcript what Clark’s exact response was to the first question, we note that his response apparently prompted the second question about whether such an injury had required medical treatment.
 

 In that statement to the LUBA representative, Clark also denied that he had ever filed a workers’ compensation claim prior to filing the instant claim, when in fact the evidence introduced at trial established that he had filed a prior claim, albeit over twenty years earlier in 1983.
 

 Clark was later deposed on February 13, 2007. When questioned in his deposition about whether he had injured his neck in the 2001 work accident, Clark responded, “No, sir. It happened in 2003.” On the other hand, when questioned about any back injuries prior to the 2001 work accident, Clark recalled at that time the work accident that had occurred twenty years earlier, noting that he was out of work for some time after that accident, but did not have any surgery then.
 

 With regard to prior neck problems, Dr. Kinnard testified that following the earlier 2001 work accident, Clark had complaints of pain in his neck with referral into the arms. However, Dr. Kinnard stated that there was very little treatment for. the neck at that time. Additionally, Dr. Kin-nard testified that when he released Clark to return to work in January 2003, Clark’s neck and hand symptoms had improved.
 

 At the trial of this matter, defense counsel again questioned Clark about whether he had injured his neck in the 2001 accident, and Clark responded that he did not recall. Also, in response to questioning about 110whether he had made neck complaints to Dr. Kinnard following the 2001 accident, Clark stated, “It’s like I said, it’s been a long time ago. It’s possible I did say so.” Similarly, when asked if he remembered injuring his neck in a 1983 work accident, Clark responded that he remembered injuring his back in 1983, but could not recall whether he had also injured his neck in that accident. Clark specifically responded, “I remember it happening. But I don’t remember what parts of my body got hurt.” Additionally, Clark noted that “all these things could have happened in between that time[,] ... [b]ut nothing never [sic] stopped me from working on a job I was on now.”
 

 Defense counsel also asked Clark whether he recalled his earlier deposition testimony wherein he denied hurting his neck in the 2001 work accident, and Clark responded, “That could have been said to [sic], I don’t remember saying it. But if you got it on paper, I must has [sic] said it.”
 

 A review of the above testimony and of the record as a whole reveals some incon
 
 *292
 
 sistencies in Clark’s statements and testimony, and it is clear that Clark, a physical laborer with an eighth grade education, was a poor historian and had problems recalling past injuries and related complaints. However, the workers’ compensation judge obviously concluded that there was no deliberate attempt by Clark to willfully mislead anyone about his prior injuries. Based on our review of the record, we cannot conclude that the workers’ compensation judge’s factual findings, which obviously involved a determination as to Clark’s credibility, were manifestly erroneous. Accordingly, we find no merit to the argument by Godfrey Knight Farms that the workers’ compensation judge erred in refusing to find that defendants had proven that Clark had willfully made a false statement for the purpose of obtaining workers’ compensation benefits. On the record before us, there is no evidence of such fraud.
 

 | nCAUSATION OF NECK INJURY AND CARPAL TUNNEL SYNDROME AND AUTHORIZATION OF MEDICAL TREATMENT
 

 (Assignments of Error Nos. 3 and 4)
 

 In assignments of error three and four, Godfrey Knight Farms avers that the workers’ compensation judge erred in concluding that Clark’s carpal tunnel syndrome, and resulting need for carpal tunnel release surgery, and current neck complaints, and resulting need for surgery, were related to the November 6, 2003 accident.
 
 [2]
 

 With regard to the carpal tunnel syndrome and neck injuries, the issue of Clark’s entitlement to medical treatment for those problems depended upon a finding by the workers’ compensation judgment that those conditions were causally related to the November 6, 2003 work accident. A workers’ compensation claimant bears the burden of establishing a causal connection between the work accident and the resulting disability by a preponderance of the evidence.
 
 Roberts v. Thibodaux Healthcare Center,
 
 2005-0774 (La.App. 1st Cir.3/24/06), 934 So.2d 84, 92.
 

 When an employee has suffered from a pre-existing medical condition, he may still meet his burden of proof of causation if he proves that the accident aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. The employee is entitled to a presumption that the injury at work either aggravated, accelerated or combined with a pre-existing injury to produce disability if he can prove that before the accident the disabling symptoms had not manifested, but that beginning with the accident they manifested, and there is either medical or circumstantial evidence indicating a reasonable possibility of causation.
 
 Hayes v. Louisiana State Penitentiary,
 
 2006-0553 12(La.App. 1st Cir.8/15/07), 970 So.2d 547, 556,
 
 writ denied,
 
 2007-2258 (La.1/25/08), 973 So.2d 758.
 
 Authement v. Consolidated, Water Works District No. 1,
 
 2005-0877 (La.App. 1st Cir.5/5/06), 935 So.2d 158, 162-163;
 

 Once the employee has established the presumption of causation, the opposing party bears the burden of producing evidence and persuading the trier of fact that it is more probable than not that the work injury did not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability.
 
 Authement,
 
 935 So.2d at 163.
 

 
 *293
 
 In the instant case, the evidence establishes that Clark did have pre existing neck and hand problems, having had complaints of pain in his neck with referral pain into the arms following the earlier 2001 work accident.
 
 [3]
 
 However, Clark testified that after he returned to work in October 2002, following lower back surgery, he did not have any pain or any problems with his neck or hands until the accident in question. Similarly, Dr. Kin-nard testified that when he released Clark to return to work in January 2003, Clark related to him that his neck and hand symptoms had improved. Moreover, as noted by the workers’ compensation judge, there were no medical records of Dr. Kinnard documenting any problems after January 3, 2003, when he had released Clark to return to work following the previous work accident, until after the accident in question. Additionally, the workers’ compensation judge noted that Clark had returned to full-duty work with no modifications following the earlier 2001 work accident. His neck and hand symptoms manifested themselves again only after the accident in question.
 

 1 ^Moreover, Dr. Kinnard, Clark’s treating physician, opined that Clark’s current neck problems were causally related to the November 6, 2003 accident, which he believed aggravated or re-injured Clark’s pre-existing neck problems. Dr. Kinnard further testified that there were two possible causes of Clark’s carpal tunnel syndrome. Specifically, these causes were identified as resulting from either repetitive use of Clark’s hands from his job, or from a condition called double-crush syndrome. He explained that double crush-syndrome refers to a situation where there is evidence of nerve root irritation at the neck or cervical spine level, and it renders the nerve more susceptible to even small amounts of pressure at a more distant site. Thus, double-crush syndrome is a condition whereby a patient has a neck injury and may then develop carpal tunnel syndrome because of the irritation present at the neck level.
 

 On the other hand, Dr. Kinnard noted that symptoms of carpal tunnel syndrome were present after the 2001 accident, but that they had subsided prior to the instant accident. Thus, Dr. Kinnard stated that while Clark’s repetitive use of his hands at work could have caused his carpal tunnel syndrome, the nerve root irritation in Clark’s cervical spine, which he related to the November 6, 2003 work accident, could also be identified as a contributing cause of his carpal tunnel syndrome. Regarding Clark’s current pain in the left hand, Dr. Kinnard further stated, “I believe that the persistent pain, at this point, has probably originated from the level of the neck,” explaining that there is some overlap in nerve patterns whereby the C-6 nerve root compression will cause symptoms in a similar distribution as carpal tunnel syndrome.
 

 Thus, given that Clark was symptom-free for months prior to the accident in question and that his treating physician identified a causal |uconnection between Clark’s current conditions and the work accident in question, we find no error in the workers’ compensation judge’s conclusion that Clark established his entitlement to the presumption that the injury at work either aggravated, accelerated or combined with his pre-existing injuries to produce his disability. Thus, defendants then had the burden of proving that it was more probable than not that the work injury did
 
 *294
 
 not accelerate, aggravate or combine with the pre-existing disease or infirmity to produce his disability.
 

 On appeal, Godfrey Knight Farms challenges the workers’ compensation judge’s finding of causation, contending that the amount of time that elapsed between the accident and Clark’s first complaints of neck pain, the fact that Clark had previously injured his neck and wrists, and the fact that the accident in question involved the lower back and not the neck or wrists demonstrate that Clark’s current neck and wrist problems were not causally related to the accident in question.
 

 Godfrey Knight Farms also relies on the opinion of Dr. Joe Morgan, an orthopedic and hand surgeon who examined Clark on one occasion at the request of LUBA, in asserting that the workers’ compensation judge erred in finding Clark’s neck problems causally related to the November 6, 2003 work accident. Dr. Morgan issued a report dated June 15, 2006, wherein he summarized the medical records he had reviewed and his findings upon physical examination of Clark. Dr. Morgan then concluded that none of Clark’s current problems were related to the November 6, 2003 work accident. However, with regard to Clark’s neck condition, Dr. Morgan stated only as follows, “His other symptoms of problems with his neck I do not consider to be related to the accident of 2003.” Dr. Morgan gave no reasoning for this conclusion.
 

 11RWhile there was some question raised about the amount of time that elapsed between the accident in question and Clark’s first complaints of neck pain, we note, as did the workers’ compensation judge in finding causation, that, in addition to complaining of lower back and leg pain on the initial visit with Dr. Kinnard, Clark had also indicated on the pain drawing at the visit with Dr. Soignet immediately following the November 6, 2003 accident that he was experiencing neck and arm pain. Additionally, when Clark began physical therapy in December 2003, the month after the accident in question, he reported neck complaints to the physical therapist at that time. And again, in March 2004, Clark related that he was experiencing neck problems in a statement given to a LUBA representative.
 

 In addition, while Godfrey Knight Farms contends that the November 6, 2003 work accident involved the lower back only, and not the neck, we note that Clark’s description of the accident, which was not disputed by Knight or any other potential witness, belies such an argument. Clark described being thrust back and forth several times between the row-covering tool and the tractor tire while Knight attempted to regain control of or maneuver the tractor. Thus, while the direct impact was to the lower back area, clearly such an accident could reasonably be found to have caused other less direct injuries also. Consequently, we find no error in the workers’ compensation judge’s finding that defendants had failed to rebut the presumption of causation with regard to Clark’s current neck complaints.
 

 With regard to the carpal tunnel syndrome, Godfrey Knight Farms relies on the opinions of Dr. Morgan and Dr. Eric George, a hand surgeon who examined Clark on one occasion for an independent medical examination. Dr. Morgan and Dr. George opined that Clark’s carpal tunnel syndrome was not related to the accident at issue. Dr. Morgan based his | lfiopinion on the documentation of Clark’s complaints in his medical records and the fact that, according to his review of those records, Clark did not mention any hand problems until March 4, 2005, a year and four months after the work accident. Although Dr. George did not specifically
 
 *295
 
 state in his report why he did not relate Clark’s carpal tunnel syndrome to the November 6, 2003 work accident, he did note in his report that Clark’s first complaints of hand problems appeared to be in March and April 2005.
 

 In concluding that Clark’s carpal tunnel syndrome and related need for surgery were causally related to the November 6, 2003 accident, the workers’ compensation judge chose to credit the opinion of the treating physician over those of Drs. Morgan and George. As a general rule, while the trier of fact is required to weigh the testimony of all medical witnesses, the testimony of the treating physician should be accorded greater weight than that of a physician who examines a patient only once or twice.
 
 Scott v. Wal-Mart Stores, Inc.,
 
 2003-0858 (La.App. 1st Cir.2/23/04), 873 So.2d 664, 669. On the other hand, an independent medical expert’s (IME) medical conclusions should also be given significant weight because the IME is an objective party.
 
 Scott,
 
 873 So.2d at 669;
 
 see also
 
 LSA-R.S. 23:1123.
 

 In crediting Dr. Kinnard’s opinion herein, the workers’ compensation judge specifically noted that neither Dr. Morgan nor Dr. George discussed the possible correlation between Clark’s neck injury and subsequent symptoms relating to carpal tunnel syndrome and, thus, that she was relying on the treating physician’s opinion and conclusions regarding injury, disability, and causation. Under these circumstances, we cannot conclude that the workers’ compensation judge erred in giving greater weight to the |17opinions and conclusions of Dr. Kinnard, the treating orthopedic surgeon.
 
 See Scott,
 
 873 So.2d at 669-670.
 

 Considering the foregoing and the record as a whole, we find no manifest error in the workers’ compensation judge’s factual determinations that Clark had established a presumption of causation with regard to his neck complaints and carpal tunnel syndrome, that defendants had failed to rebut the presumption, and, consequently, that Clark’s current neck complaints and need for cervical surgery and carpal tunnel syndrome and need for surgery were causally related to the November 6, 2003 work accident.
 
 See Authement,
 
 935 So.2d at 163.
 

 AUTHORIZATION OF DISCOGRAM
 

 (Assignment of Error No. 5)
 

 In this assignment of error, God-frey Knight Farms avers that the workers’ compensation judge erred in authorizing an unnecessary discogram, contending that Dr. Kinnard made his own decision about the need for cervical surgery without the necessity of a discogram and that both Drs. Morgan and George concluded that cervical surgery was not necessitated as a result of the work accident in question.
 

 An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. LSA-R.S. 23:1203(A). To recover medical expenses authorized under LSA-R.S. 23:1203, the claimant must prove by a preponderance of the evidence that the expenses are reasonably necessary for treatment of a medical condition caused by the work injury.
 
 Roussell v. St. Tammany Parish School Board,
 
 2004-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 460,
 
 writ not considered,
 
 2006-2362 (La.1/8/07), 948 So.2d 116. Whether a claimant is entitled to medical benefits is ultimately a question of fact, and the fact finder’s resolution of liRthat issue may not be disturbed by the appellate court in the absence of manifest error.
 
 Roussell,
 
 943 So.2d at 460.
 

 At the outset, we note that while God-frey Knight Farms challenges the need for
 
 *296
 
 a discogram on the bases that Dr. Kinnard made his own decision about the need for cervical surgery without the necessity of a discogram and that both Drs. Morgan and George concluded that cervical surgery was not necessitated as a result of the work accident in question, the discogram ordered by Dr. Dietze was actually a lumbar discogram, not a cervical discogram. Furthermore, Dr. Kinnard agreed with Dr. Dietze that a lumbar discogram was indicated. Defendants offered no evidence to counter the need for this diagnostic test.
 

 Accordingly, we find no manifest error in the workers’ compensation judge’s finding that Clark proved his entitlement to have the lumbar discogram as recommended by Dr. Dietze. This assignment of error lacks merit.
 

 TEMPORARY TOTAL DISABILITY BENEFITS
 

 (Assignment of Error No. 2)
 

 In this assignment of error, God-frey Knight Farms contends that it properly reduced Clark’s benefits to supplemental earnings benefits (SEBs) and that the workers’ compensation judge erred in returning Clark to temporary total disability benefits (TTDs) where Godfrey Knight Farms established that Dr. Kinnard had approved several jobs for Clark presented to Dr. Kinnard by the vocational rehabilitation counselor.
 

 Pursuant to LSA-R.S. 23:1221(1)(c), the claimant has the burden of proving his temporary total disability by clear and convincing evidence. Clear and convincing proof requires objective medical evidence of the disabling condition causing the employee’s inability to engage in any | ^employment. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet this standard,
 
 Roussell,
 
 943 So.2d at 457-458. The factual finding of whether a claimant is entitled to TTDs is subject to the manifest error or clearly wrong standard of appellate review.
 
 Roussell,
 
 943 So.2d at 458.
 

 As stated above, Godfrey Knight Farms contends that the workers’ compensation judge erred in finding that Clark was entitled to TTDs because Dr. Kinnard approved several jobs for Clark. However, as noted by the workers’ compensation judge in support of her finding, Dr. Kin-nard explained his position regarding Clark’s ability to return to work in his deposition. Specifically, Dr. Kinnard explained that if it were determined that Clark’s current neck and hand problems were not related to the work accident at issue, then, from a workers’ compensation standpoint, he would have nothing further to offer Clark. If, however, it were determined that the neck and hand problems were related to the work accident at issue, then Dr. Kinnard would proceed with recommending the surgical discectomy and fusion and the right carpal tunnel release, and, under those circumstances, Clark would not be released to return to work.
 

 Thus, having determined above that the workers’ compensation judge did not manifestly err in finding that Clark had established that his current neck injury and carpal tunnel syndrome were causally related to the work accident at issue, we likewise find no error in the conclusion that Clark established his temporary total disability status by clear and convincing evidence. This assignment of error also lacks merit.
 

 | ^PENALTIES AND ATTORNEY’S FEES
 

 (Assignment of Error No. 6)
 

 In its final assignment of error, Godfrey Knight Farms contends that the
 
 *297
 
 workers’ compensation judge erred in imposing penalties and attorney’s fees where it reasonably controverted the causal relationship between the work accident at issue and the need for carpal tunnel release surgery and neck surgery and where Clark’s weekly indemnity benefits were reasonably reduced to SEBs.
 

 At the outset, we note that the workers’ compensation judge did not impose penalties or attorney’s fees against defendants for either their failure to authorize treatment for Clark’s carpal tunnel syndrome or for them reduction of his weekly indemnity benefits to SEBs. Rather, penalties and attorney’s fees were imposed specifically for defendants’ refusal to authorize the lumbar diseogram and their refusal to authorize treatment and surgery for Clark’s cervical injury. Accordingly, we review the workers’ compensation judge’s determination that an assessment of penalties and attorney’s fees were warranted for those actions.
 

 Pursuant to LSA-R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney’s fees for failure to timely pay weekly indemnity or medical benefits where the employer or insurer has failed to reasonably controvert the claim. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the claimant.
 
 Roussell,
 
 943 So.2d at 462. A determination of whether an employer or insurer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review.
 
 Poole v. Guy Hopkins Construction,
 
 2007-0079 (La.App. 1st Cir.11/2/07), 984 So.2d 43, 50.
 

 12i In the instant case, in finding that defendants had failed to reasonably controvert the need for the lumbar diseogram, the workers’ compensation judge stated as follows:
 

 Dr. Dietz[e], on September 27, 2004, suggested a diseogram needed to be conducted in order to determine more about claimant’s back.
 

 The defendants] did not approve a diseogram during this whole time and did not come up with anything to contradict the need for a diseogram or for any relationship where the back was not related until Dr. Morgan’s report of June 15, 2006. Therefore, penalties in the amount of $2,000 are being applied.
 

 We find no manifest error in these factual findings. Specifically, we note that defendants had absolutely no evidence to refute plaintiffs claims or even suggest that the aggravation of Clark’s lower back condition was not causally related to the work accident in question until almost two years after the diseogram was recommended, when Dr. Morgan opined that any need for lumbar surgery would be related to the earlier 2001 work accident and that Clark had reached maximum medical improvement from any injury he had suffered from the 2003 accident.
 

 Furthermore, in finding that defendants had failed to reasonably controvert Clark’s need for medical treatment for his neck injury, the workers’ compensation judge further stated:
 

 The claimant mentioned that he injured his neck early on the case [sic]. You can see the physical therapy notes of December of 2003. And you can see the employee statement, saying his neck was involved.
 

 There was nothing to contradict any relationship with the neck. Therefore, any medical treatment with the neck should have been paid for. Therefore, the defendants are being assessed $2,000 for not authorizing treatment for the neck.
 

 
 *298
 
 As discussed in detail in our discussion of causation, these findings regarding Clark’s complaints of neck problems were amply supported by the record, and Clark’s treating physician related these complaints to the work accident in question.
 

 IzgThus, considering the foregoing and the record as a whole, we cannot conclude that the workers’ compensation judge manifestly erred in concluding that defendants did not reasonably controvert Clark’s entitlement to such medical treatment and testing. This assignment of error also lacks merit.
 

 CONCLUSION
 

 For the above and foregoing reasons, the June 4, 2008 judgment of the OWC is affirmed in its entirety. Costs of this appeal are assessed against Godfrey Knight Farms.
 

 AFFIRMED.
 

 [1]
 

 . Clark had a previous work-related injury in May 2001, while employed by Godfrey Knight Farms, when a tractor tire that Knight was changing fell on Clark. As a result of that accident, Clark suffered a lumbar disc herniation at the L5-S1 level. Following that injury, Clark continued to work until Dr. Kinnard performed lower back surgery in June 2002. While Dr. Kinnard released Clark to return to work in January 2003 following the lower back surgery, Clark had already returned to work in October 2002.
 

 Clark also had some cervical complaints with referral pain into the arms following the 2001 work accident. While a cervical MRI revealed disc pathology at C5-C6 and C6-C7, Dr. Kinnard testified that there was little treatment for Clark's neck after that accident. Moreover, by the time Dr. Kinnard released Clark to return to work in January 2003, Clark's symptoms in his neck and upper extremities had improved. Clark worked from October 2002 until the date of the accident in question on November 6, 2003, without incident.
 

 [2]
 

 . In these assignments of error, Godfrey Knight Farms challenges the authorization of medical treatment for Clark’s neck condition and carpal tunnel syndrome on the basis of causation only.
 

 [3]
 

 . Other prior occasions of pain in the neck and hands were also documented in the record.