# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-00405-COA

**PATRICK M. O'BRIEN**                                                   **APPELLANT**

**v.**

**ROSE MARIE PEGUES, ISAAC DANIEL**                              **APPELLEES**
**SCOTT, VIVIAN AURITA CHATMON,**
**EDWARD LOGAN SCOTT, III, WILLENA**
**VERNETTA WHITE, OCTAVIA LYNNE PACK**
**AND CLAUDETTE DEVELOPMENT, LLC**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/19/2020 |
| TRIAL JUDGE: | HON. CATHERINE FARRIS-CARTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CHANCERY COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | JOHN MARSHALL ALEXANDER ROBERT G. JOHNSTON |
| ATTORNEYS FOR APPELLEES: | SHELDON G. ALSTON ROBERT LANE BOBO |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 09/07/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE BARNES, C.J., McDONALD, McCARTY AND EMFINGER, JJ.

## BARNES, C.J., FOR THE COURT:

¶1.     In 2016, Patrick O'Brien filed suit in the Bolivar County Chancery Court against the heirs at law of Edward Scott (Appellees), seeking payment for expert-witness and consulting services he provided for Scott in a federal arbitration case.  The Appellees asserted several affirmative defenses, including statute of limitations.  After a bench trial, the chancery court denied O'Brien the relief requested, finding that there was no evidence of a valid contract and that the suit was barred by statutes of limitations.  The chancery court denied O'Brien's

posttrial motions, and he now appeals.  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Scott was an African-American farmer and businessman in Bolivar County, Mississippi.  After the United States Department of Agriculture (USDA) discriminated against Scott in the making and administering of federal agricultural loan programs, Scott lost his farmland (the subject property) to foreclosure.  He joined two class-action suits (*Pigford et al. v. Glickman* and *Brewington et al. v. Glickman*) filed in the United States District Court for the District of Columbia, commonly referred to as the "Pigford Litigation" or the "Black Farmers' Litigation."  The Black Farmers' Litigation resulted in a consent decree in 1999, which established funds to pay successful claims.  The decree had a two-prong arbitration process—Track A and Track B.  Track A simply required claimants to prove discrimination resulting in a one-time damage award of $50,000.  Track B allowed successful claimants to recover any damages they could prove without any predetermined limitations.

¶3.     Scott elected to participate in the Track B arbitration and retained attorney Phillip Fraas to represent him.[1]  In May 2010, Fraas hired O'Brien as an expert witness in the field of economic damages.  Scott's arbitration was successful, and he was awarded $9,091,318 on November 16, 2011.  The USDA petitioned for review, and upon re-examination, the

---

[1] Fraas had been designated as lead counsel in the consent decree.

award was reduced to $6,382,028 on April 17, 2012.[2]  Scott repurchased his farmland for $1,601,000 on December 3, 2013, and conveyed the property, shortly thereafter, to Claudette Development Company LLC, which is owned by Scott's children, the Appellees.

¶4.     Under the terms of the 1999 consent decree, which allowed for "reasonable attorney's fees and costs," Fraas filed a motion to recover his fees from the Department of Justice (DOJ).  This included O'Brien's fees totaling $134,587.  In the meantime, O'Brien sent Scott a letter on May 16, 2014, asking for payment of his bill.  He explained that he "had decided to wait for the DOJ's payment of [his] fees to avoid [Scott's] having to pay [him] and wait for repayment[,]" but the government's "never ending delays" left him "with no option [other] than to seek payment directly from [Scott]."  Scott's daughter, Willena White, paid O'Brien $20,000, as O'Brien had indicated that upon receipt of the DOJ's payment, he would reimburse White for the money she paid.

¶5.     On July 15, 2014, the USDA filed a petition, asserting that "Fraas's bill [was] replete with excessive, redundant, and unnecessary hours."  The petition further alleged that O'Brien's bill was "four times as high as O'Brien's bills submitted in other fee petitions[;] . . . fraught with highly inflated, non-contemporaneous time entries[;] and does not provide a reliable basis for an award."  Thus, it was the USDA's contention that O'Brien's bill "should be 4x lower in this case, not 4x higher, than in other Track B cases."  After a lengthy

---

[2] The USDA was also ordered to "forgive any debt incurred by [Scott] in the Emergency Loan Program from February 24, 1981 forward[.]"

negotiation, Fraas agreed to accept sixty-five percent (65%) of the original bill, and Fraas issued O'Brien a check for $71,971 on March 2, 2015. This payment, coupled with the $20,000 payment from White, left a remaining balance of $42,616 for O'Brien's services under his original bill.

¶6.    Scott died on October 8, 2015. Because Scott had transferred his assets before his death, Scott's heirs at law did not open an estate. O'Brien filed a petition for the appointment of an administrator on October 17, 2016, requesting that the chancery court impose an equitable lien on the subject property for the remaining $42,616 and asking the land be sold to satisfy that lien.[3] O'Brien filed an amended complaint on December 27, 2016. In their answer, the Appellees denied that Scott had "retain[ed]" O'Brien and asserted that O'Brien's claims were statutorily time-barred. They also argued that because O'Brien had accepted the funds from the USDA, his claim was barred by the doctrine of accord and satisfaction.[4]

¶7.    A bench trial was held on August 26, 2019. The only witnesses who testified were White, O'Brien, and White's brother Isaac Scott. Fraas's deposition from March 30, 2018, was also admitted as a sealed exhibit. O'Brien testified that his conversation with Fraas "was

_____

[3] Mississippi Code Annotated section 91-7-195 (Rev. 2018) provides that a decedent's creditor "shall have the right to file a petition, as the executor or administrator may, for the sale of land or personal property of the decedent for the payment of debts."

[4] The Appellees further asserted a counterclaim for the reimbursement of the $20,000 that White paid to O'Brien. In its final judgment, the chancery court determined that O'Brien "is not responsible for the repayment" of the money that White "loaned" to Scott and paid to O'Brien. The Appellees have not challenged the court's ruling on appeal.

essentially a contract to provide services for an hourly rate" and that he was to be paid at the end of arbitration. He claimed they never discussed the consent decree's terms. On cross-examination, O'Brien admitted that he had intended to reimburse White for the $20,000 upon full payment of his bill by the DOJ. O'Brien further testified that "[u]p until May 16[, 2014,] . . . all [his] requests for payments, bills, et cetera" were sent to Fraas and that it was his decision "to accept the fait accompli by Phil Fraas." He also acknowledged that he had billed nine hours for a report that was never submitted and four hours to review his own expert qualifications, and he stipulated that there was a math error on the last page of the bill.

¶8. White stated that she had no discussion with O'Brien about fees and that it was her understanding from the consent decree that O'Brien's "bill would be submitted by the attorney" and paid by the USDA. She further testified that after her father passed away, she contacted Fraas to see if any debts were outstanding that would require probate proceedings, "[a]nd he said he had submitted it, and they would be paid." Her brother Isaac also averred it was his understanding that Fraas's and O'Brien's fees were submitted to the government and paid. Isaac noted that once his father had bought back the farmland, he "put it in Claudette Development so it would be in safekeeping and . . . wouldn't be sold out of the family and made sure everything else was paid and satisfied, gave the children some, and put the other aside for us to get his farm started back."

¶9. The chancery court determined in its final judgment that O'Brien's claim was barred both by the one-year statute of limitations under Mississippi Code Annotated section 15-1-29

(Rev. 2019) and the three-year statute of limitations under Mississippi Code Annotated section 15-1-49 (Rev. 2019). The court further found no evidence of a valid contract obligating Scott "to pay any costs not paid by the USDA to O'Brien," and the relief sought by O'Brien (i.e., an equitable lien on the subject property) was "extremely harsh and unusual." The chancery court thus concluded that the portion of O'Brien's bill not paid by the USDA was "not the obligation of Edward L. Scott, Jr., his heirs, or Claudette Development, LCC."

¶10. O'Brien filed a motion to alter or amend the judgment, arguing the court's ruling that no contract existed between Scott and O'Brien "to pay plaintiff's expert witness fees is manifestly incorrect both as a matter of law and as a matter of fact." He also asserted that "the appropriate statute of limitations would be the [ten] year statute of limitation to establish a trust." Lastly, O'Brien contended the chancery court "erred in ruling that under ancient principles of equity/constructive trust that [he] did not have a claim." The court denied the motion, and O'Brien appeals the court's findings, reasserting these assignments of error.

## STANDARD OF REVIEW

¶11. We apply a "limited standard of review" in chancery court's rulings—"the factual findings of the chancery court, if supported by substantial evidence, will not be disturbed unless the chancery court abused its discretion, applied an erroneous legal standard, or its findings are manifestly wrong or clearly erroneous." *Rucker v. Miss. Dep't of Rev.*, 281 So. 3d 253, 254 (¶6) (Miss. Ct. App. 2019) (quoting *Flowers v. Boolos (In re Est. of Smith)*, 204

6

So. 3d 291, 305 (¶22) (Miss. 2016)). "However, questions of law receive a de novo review." *Id*.

## DISCUSSION

### I.     Whether a valid contract existed as a matter of law.

¶12.    The chancery court found no evidence that a contract existed requiring Scott or his heirs to pay O'Brien's fees not covered by the USDA. O'Brien argues that the court erred in "fail[ing] to recognize the rule of law that says an attorney is agent for the client with authority to bind the client." It is a stipulated fact that Scott retained Fraas as his attorney, who then hired O'Brien as an expert witness, and the Appellees do not disagree as a matter of law that an attorney can bind the client to an agreement. They contend, "Rather, the underlying issue here is whether O'Brien and Fraas had an agreement at all[.]"

¶13.    "The elements of a contract are (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 734 (¶35) (Miss. 2019) (quoting *GGNSC Batesville LLC v. Johnson*, 109 So. 3d 562, 565 (¶6) (Miss. 2013)). "Each element, where absent or legally deficient, serves as a defense to formation." 3A Jeffrey Jackson and Mary Miller, *Encyclopedia of Mississippi Law* § 21:39 (3d ed.) (updated Oct. 2020). Thus, "[a] contract is unenforceable if the material terms are not sufficiently definite." *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (¶13) (Miss. 2003) (citing *Leach v. Tingle*, 586 So. 2d 799,

7

802 (Miss. 1991)).

¶14. The chancery court noted that although Fraas and O'Brien had worked together on other cases, here neither contemplated what would happen should the government not "pay all of their requested fees in Mr. Scott's arbitration." The court's finding is supported by the evidence. In Fraas's deposition, when asked whether O'Brien "agreed at any point to take what the government paid," Fraas replied that they "had no discussion in that regard." He later reiterated that they "had no such agreement."

¶15. As the court further ruled, there was also "no evidence in the record that Mr. Scott agreed to pay Attorney Fraas or O'Brien any cost that was not paid by the USDA whether the costs were reasonable or unreasonable." Fraas did state in his deposition that it was his "understanding" Scott "would be responsible for the expert fees." However, Fraas also acknowledged that he did not send any of O'Brien's bills to Scott; they were only forwarded to the DOJ for payment. He also said that Scott was not involved in the negotiations with the DOJ regarding the payment of fees. And after Fraas agreed to the reduction in fees, he attested that he could not "recollect" whether he told the Scott family they would owe O'Brien for the remaining fees. Because the required element that there be a sufficiently definite agreement between the parties was not present, we find no abuse of discretion in the chancery court's determination that no contract existed "which would obligate Mr. Scott and/or his family to pay any costs not paid by the USDA to O'Brien."

   II.     **Whether a statute of limitations barred O'Brien's action.**

8

¶16. The chancery court concluded that O'Brien's suit was barred by both one-year and three-year statutes of limitations "because the suit was brought more than three years after the completion of work in the Scott's arbitration." Section 15-1-29 provides in part "that an action based on an unwritten contract of employment shall be commenced within one (1) year next after the cause of such action accrued, and not after." The chancery court did not make a determination as to whether the "contractual agreement between Fraas and O'Brien" was "a typical employer/employee relationship" because the court concluded that O'Brien's claim was also barred by the three-year statute of limitations in section 15-1-49. That statute provides:

> (1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.

> (2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.

> (3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

Miss. Code Ann. § 15-1-49. The court determined that the "controlling time period ended on February 27, 2015," three years after O'Brien's first bill for services was submitted to Fraas.

¶17. O'Brien argues that the applicable statute of limitations is ten years under Mississippi Code Annotated section 15-1-39 (Rev. 2019), which reads in pertinent part, "Bills for relief,

in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . . ." However, the ten-year statute of limitations in section 15-1-39, which applies "to both express and implied trusts . . . is limited[] in that the cause of action and remedy of the case must be purely and exclusively equitable[.]" *Wholey v. Cal-Maine Foods Inc.*, 530 So. 2d 136, 139 (Miss. 1988). In his amended complaint, O'Brien averred "that under common law and equitable principles, he has a lien or constructive trust on the funds of the award to the extent that his bill for professional services, $42,616.00 is still owed[.]" Thus, he contends that the remedy sought in his claim was "purely and exclusively equitable."

¶18. "Statute-of-limitations issues are questions of law, and receive a de novo review on appeal." *Brown v. McClinton (In re Guardianship of McClinton)*, 157 So. 3d 862, 872 (¶28) (Miss. Ct. App. 2015) (citing *Lott v. Saulters*, 133 So. 3d 794, 798 (¶5) (Miss. 2014)). The Appellees assert that the primary cause of action in this case is not purely equitable but "a straight forward breach of contract claim." We agree that although O'Brien has requested an equity-based *remedy*, the basis for the action is an alleged breach of contract for payment of his itemized professional services. As noted above, O'Brien asserted in his amended complaint that Scott, through his attorney, retained O'Brien (at the rate of $150 per hour) and that recoupment of the fees from the DOJ "constituted an amendment *of the contract* or a novation[.]" (Emphasis added). Nevertheless, as already addressed, there was no evidence

10

of a valid, enforceable contract for payment of any services not paid by the USDA; thus the "catch-all" three-year statute of limitations under section 15-1-49 would be applicable.

¶19. O'Brien alternatively argues that if the three-year statute of limitations is applicable, his claim was not barred because he filed his amended complaint on December 27, 2016, and the DOJ monies were distributed in March 2015. In finding the action statutorily barred, the chancery court reasoned that "the majority of O'Brien's expert witness work took place in 2010," a finding supported by O'Brien's own testimony that the "vast majority of the time [he expended] was in 2010." Furthermore, the suit was filed more than three years after O'Brien's work in Scott's arbitration was completed. O'Brien's itemized bill indicates that the latest charges related to Scott's arbitration proceedings were incurred in May 2012. As the chancery court noted, any costs O'Brien incurred after arbitration was complete were to defend his charges in response to the USDA's petition, which "was not in furtherance of Mr. Scott's case, but rather in defense of O'Brien's work product." The court further acknowledged that while "the USDA's payment process may have been difficult and time-consuming, no procedural bar stopped O'Brien from instituting this legal action at any point prior to the running of the statute of limitations." O'Brien acknowledged that he did not pursue any action because he was waiting for the USDA to pay him.

¶20. The Mississippi Supreme Court "has held that a cause of action accrues 'when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested.'" *Weathers v. Metro. Life Ins. Co.*, 14 So. 3d 688, 692 (¶14) (Miss. 2009) (quoting *Bullard v.*

11

*Guardian Life Ins. Co. of Am.*, 941 So. 2d 812, 815 (¶11) (Miss. 2006)). O'Brien acknowledged at the hearing that the first bill sent to Fraas was on February 27, 2012. Fraas contacted him at that point to inform him that they would wait to get the monies from the DOJ. O'Brien admitted that he had the ability to file suit at that time against Scott, but he expected the DOJ to pay within "two or three months" and "instituting a suit against the Scotts would have taken a lot of time and cost a lot of money." We find no error in the chancery court's ruling that O'Brien's claim was statutorily barred.

III. **Whether the chancery court erred by not applying principles of implied contract and unjust enrichment.**

¶21. O'Brien contends that because Scott clearly benefitted from his services by obtaining a significant monetary award, there was an implied contract at law, and the chancery court's decision unjustly enriched the Appellees. The supreme court has held:

> As a general rule, in order to recover for work and labor on the theory of an implied contract, it is ordinarily deemed essential to show that the services were rendered under the reasonable expectation that they would be paid for by the person sought to be charged, and the person sought to be charged knew that the services were being performed with the expectation that he would pay for such work.

*Redd v. L & A Contracting Co.*, 246 Miss. 548, 558, 151 So. 2d 205, 209 (1963). O'Brien's own testimony belies any argument that he rendered his professional services with the expectation that Scott was going to pay him. His testimony, rather, was that he anticipated payment by the USDA in accordance with prior Track B cases. Furthermore, even if this Court were to find an implied contract at law existed, O'Brien's claim would still be barred

12

by the applicable statute of limitations as discussed above.

¶22. Lastly, "[u]njust enrichment applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or she should not be permitted to retain, causing him or her to remit what was received." *Willis v. Rehab Sols. PLLC*, 82 So. 3d 583, 588 (¶14) (Miss. 2012). As O'Brien notes in his posttrial motion, the chancery court made no specific findings with regard to unjust enrichment. The court did, however, determine that although "O'Brien's work was valuable and help to right an egregious wrong, . . . it would be an injustice of the highest level . . . to place the Scott family in the position of losing this land once again" simply because the USDA and Fraas refused to pay O'Brien for the full amount of services he billed. Also, as indicated in the USDA's June 2014 petition, O'Brien was compensated adequately for his time when compared to other Track B arbitration cases. We therefore agree with the court's reasoning and find no basis for O'Brien's argument that the Appellees were unjustly enriched in this instance.

### IV. Whether the chancery court erred in failing to impose a constructive trust and/or equitable lien on the subject property.

¶23. Finding the remedy requested by O'Brien was "harsh and unusual," the chancery court concluded:

> It would be an injustice of the highest level for this [c]ourt to place the Scott family in the position of losing this land again because of the fact that the USDA, and to some major extent Attorney Fraas, has refused to pay O'Brien for the work he performed under the direction of Attorney Fraas.

13

O'Brien appeals the ruling, arguing that his only remedy "is an equitable lien or constructive trust on the farmland involved" because "Scott is now deceased and no estate has been opened for him[;] . . . [so] there is no way [he] can probate his claim[.]"[5]

¶24.    First, we disagree that O'Brien had no other adequate remedy at law. Mississippi Code Annotated section 91-7-263 (Rev. 2018) provides:

> Any creditor of the decedent may represent to the court that the estate is insolvent, and thereupon the executor or administrator and heirs or devisees shall be summoned to answer whether or not it be insolvent. If it shall be found so, like proceedings shall be had as when an estate is represented to be insolvent by the executor or administrator.

The supreme court has recognized that a creditor could "be entitled to administer" a will for probate under this statutory provision. *Greenville Lumber Co. v. Hammett*, 889 So. 2d 502, 504 (¶8) (Miss. 2004) (citing Miss. Code Ann. § 91-7-263 (Rev. 2004)). O'Brien did not do so within the applicable statute of limitations.

¶25.    Second, because there was no valid contract for payment of O'Brien's services not reimbursed by the USDA, we can find no error in the court's decision to deny O'Brien the equitable relief sought in his petition. A chancery court's decision whether to impose an equitable lien is reviewed de novo. *Barriffe v. Est. of Nelson*, 153 So. 3d 613, 620 (¶36) (Miss. 2014). "An equitable lien is the right by which a creditor is entitled to obtain

---

[5] O'Brien also contends that the chancery court did not make "any findings of facts and conclusions of law on the doctrines of constructive trust and equitable lien[.]" We find O'Brien waived this issue, failing to request that the court make special findings under Rule 52(a) of the Mississippi Rules of Civil Procedure. Nor did he assert this specific claim in his Rule 59 motion to alter or amend the judgment.

satisfaction of his debt by resort to specified property belonging to the debtor, *when it is clear that the debtor intended to create an encumbrance*." *Id*. (emphasis added). As the court found, there was no evidence presented that Scott intended to pay any of O'Brien's fees not covered by the USDA. Further, there was no evidence Scott intended to create an encumbrance on this property. Scott did not even own the property at the time O'Brien's fees were incurred. While Scott repurchased the farmland with the award obtained in part due to the efforts of O'Brien, there is no evidence that Scott intended to encumber the property with a lien in favor of O'Brien. In fact, White testified that her father formed "Claudette Development because he wanted to ensure that the family land he had fought for 29 years to get back from the government stayed in [the] family and was not sold." Isaac, her brother, corroborated this testimony, noting that his father wanted to make sure that the subject property stayed in the family and "everything else was paid and satisfied."

¶26.    Accordingly, we affirm the chancery court's judgment.

¶27.    **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

15