984 So.2d 43 (2007)
Charles POOLE, Jr.
v.
GUY HOPKINS CONSTRUCTION.
No. 2007 CA 0079.
Court of Appeal of Louisiana, First Circuit.
November 2, 2007.
*45 Michael B. Miller, Crowley, LA, for Plaintiff-Appellee, Charles Poole, Jr.
Christopher R. Philipp, Lafayette, LA, for Defendant-Appellant, Guy Hopkins Construction.
Before CARTER, C.J., PETTIGREW, and WELCH, JJ.
PETTIGREW, J.
In this workers' compensation dispute, the claimant, Charles Poole, Jr., was injured while in the course and scope of his employment as a laborer with Guy Hopkins Construction Company ("Guy Hopkins"). According to the record, Guy Hopkins paid workers' compensation benefits to Mr. Poole in the form of temporary total disability benefits at a rate of $416.00/week from April 30, 2003 through August 4, 2003, when Mr. Poole's benefits were terminated, prompting him to file a disputed claim for compensation.
The matter proceeded to trial on November 28, 2005, and February 2, 2006, at which time the parties entered into the following stipulations: 1) Mr. Poole was employed by Guy Hopkins on April 10, 2003; 2) Mr. Poole's average weekly wage was $629.06; 3) Mr. Poole's indemnity rate was $416.00/week; 4) Mr. Poole continued to work for Guy Hopkins until April 29, 2003; and 5) Guy Hopkins paid all of Mr. Poole's medical expenses with the exception of the University Medical Center bills. The parties presented the following issues to the workers' compensation judge ("WCJ") for consideration: 1) whether Mr. Poole sustained an accident or injury while in the course and scope of his employment with Guy Hopkins; 2) the nature and extent *46 of any disability suffered by Mr. Poole; 3) whether Guy Hopkins was arbitrary and capricious in its termination of Mr. Poole's workers' compensation benefits entitling Mr. Poole to attorney fees for said termination; 4) whether the denial of choice of physician was arbitrary and capricious giving rise to attorney fees; 5) whether the University Medical Center bills were reasonably necessary and whether Guy Hopkins' failure to pay them makes them liable to Mr. Poole for penalties and attorney fees; 6) whether Mr. Poole was entitled to any supplemental earning benefits from April 11, 2003 through April 29, 2003; and 7) whether the initial payment of indemnity benefits was late, and if so, whether Mr. Poole was entitled to penalties and attorney fees.
After listening to the testimony of the witnesses at trial and reviewing the applicable law and documentary evidence in the record, the WCJ issued its written ruling on February 10, 2006, finding in favor of Mr. Poole and against Guy Hopkins. The WO. found that Mr. Poole sustained an accident in the course and scope of his employment with Guy Hopkins on April 10, 2003, and that he was entitled to temporary total disability benefits in the amount of $416.00/week beginning May 6, 2003. The WO further found that Guy Hopkins was required to pay all reasonable and necessary medical treatment, including the bill from University Medical Center, and the back surgery recommended by Dr. Cobb. The WO also ordered Guy Hopkins to pay penalties in the amount of $2,000.00 and attorney fees in the amount of $3,000.00 for its failure to pay the University Medical Center bills, as well as attorney fees in the amount of $17,000.00 for its arbitrary and capricious termination of Mr. Poole's benefits on August 3, 2003. A judgment in accordance with these findings was signed by the WO on March 22, 2006. This appeal by Guy Hopkins followed.
On appeal, Guy Hopkins assigned the following specifications of error:
1. The trial court erred when it ruled that Dr. Broussard was not POOLE'S choice of physician and allowed him to switch his medical care to Dr. John Cobb, notwithstanding the fact that Dr. Broussard had treated POOLE for five years.
2. The trial court erred when it ruled that POOLE had an accident in the course and scope of his employment on April 10, 2003 which error occurred due to the court's misinterpretation of the evidence and the use of an incorrect presumption.
3. The trial court erred when it ordered GUY HOPKINS to pay POOLE'S University Medical Center bill when there was no reference to any work related injury or treatment in the medical records.
4. The trial court erred when it awarded POOLE penalties and attorney's fees for failing to pay the University Medical Center bill referenced above.
5. The trial court erred in awarding POOLE $17,000.00 in attorney's fees for discontinuing POOLE'S temporary-total disability benefits on August 4, 2003.
Mr. Poole answered the appeal, seeking additional attorney fees for work on this appeal.

OCCURRENCE OF AN ACCIDENT
As a threshold requirement, a workers' compensation claimant bears the initial burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Magee v. Abek, Inc., 2004-2554, p. 4 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 806, writ denied, XXXX-XXXX (La.10/27/06), 939 So.2d 1287. "Accident" is defined in *47 La. R.S. 23:1021(1) as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." Whether a claimant has carried his or her burden of proof and whether testimony is credible are questions of fact to be determined by the trier of fact. Allman v. Washington Parish Police Jury, XXXX-XXXX, p. 3 (La.App. 1 Cir. 3/24/05), 907 So.2d 86, 88. Factual findings in a workers' compensation case are subject to the manifest error-clearly wrong standard of review. McCray v. Delta Industries, Inc., XXXX-XXXX, p. 4 (La.App. 1 Cir. 9/28/01), 809 So.2d 265, 269. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556. Thus, "[i]f the [fact finder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Bolton v. B E & K Const., XXXX-XXXX, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35.
After hearing from the witnesses and considering the documentary evidence in the record, the WO made the following findings concerning whether Mr. Poole sustained a compensable work-related accident:
The first issue before the court is whether or not Mr. Poole had an accident or sustained an injury in the course and scope of his employment on April 10, 2003. The court is of the opinion that he did.
The testimony of Mr. Poole is that he injured himself swinging a maul putting in [stobs] to set up a form at the Team Toyota site on April 10, 2003 and while he was doing that he injured his back.
Now, in his recorded statement of April 29, 2003, he discusses what occurred. He states that on that day he was swinging a 10 pound maul driving stakes and his back went out. He felt the pain immediately and it got worse as the day went on; that later in the day he started feeling numbness. He also says that he reported it to his supervisor, Melvin, and Melvin  he mentioned it to Melvin and Melvin got him some help. He stopped using the maul and just held the stakes for the person that Melvin got to help. Now, when he gave his statement he had the name "Robertson" with Melvin and that turns out to be incorrect; it was Melvin Coleman. Mr. Coleman testified that Mr. Poole did say that he had hurt his back on the job, but he did not give any specifications as to how he hurt it. Mr. Coleman says that Mr. Poole did not tell him that he hurt it while he was driving stakes, but that he did recall that Mr. Poole complained of back pain while he was on the job that day.
Now, in Mr. Poole's testimony before the court in discussing the accident he states that after he hurt his back driving the stobs with the maul, that Melvin was standing a short distance away and he hollered to him and told Melvin that he had hurt his back and Melvin sent for Darby, that meaning Darby Griffin. So the only real conflict here is that Mr. *48 Coleman says that Mr. Poole did not tell him that he hurt his back on the job, just that he was having back pain, but he did send for help. Now, Mr. Poole says that Mr. Coleman was standing a distance away and I am taking the position that in hollering to Mr. Coleman, perhaps Mr. Coleman didn't hear that he injured himself, but he knew that he was having back pain, he knew that he was driving stakes on the job and he sent to get him help. That is corroborated by Mr. Darby Griffin who took the stand and stated that he was inside at Team Toyota doing some work and that he was sent . . . to go out and help do the concrete forming. When he got out there, that everybody  the accident had already happened, there were people standing around talking about it, and he took up the maul and Mr. Poole held stakes for him to drive with the maul; that he was not a witness to the accident, but he did say that they were all talking about the fact that he was hurt. Now, to me that is enough evidence to prove that the accident occurred on the job.
At that time there is a list in evidence of approximately six people that were on that crew and the only person that gave any information to the adjustor at the time that this happened was Mr. Monteleon. Mr. Monteleon's testimony was that Mr. Poole did not go to him and tell him that he was hurt that day; that he didn't know about the case until he was contacted by Mr. Phillip. Well, nowhere in the testimony can I find where Mr. Poole said that he told Mr. Monteleon about it. He said that he told Mr. Coleman about it. It was reported in a 1007 by Jan Bourcegay or by her name on the 1007. Her testimony was that she didn't fill that 1007 out; she didn't know anything about it, so apparently the adjustor filled the 1007 out and put her name on it. She's the human resources and payroll person. No investigation was done by her. No investigation was done by anyone.
They found out  even if I accept their position that they didn't know that he had injured himself on the job until he stopped working, because he did continue to work for about three weeks after that, no one talked to any of these gentlemen who worked with him to find out if there was an accident on the job. Frankly, they accepted it as an accident on the job. They sent him to Dr. Broussard and he started getting treatment, He did everything they asked him to do. He continued to try to work. Now, this is a gentleman who has had no less than four accidents on the job in the approximately eight to ten years that he worked for Guy Hopkins. Most of them, I think three out of the four, involved his back, and on every occasion he went to the doctor, he did what he was told, he got released to duty, he went back to work and he worked again for a couple of years or however long until he would injure his back again. Sure, he's got a pre-existing condition, but he is doing heavy manual labor and it is expected that these kinds of things will happen and they took care of him until this time when apparently surgery became necessary.
The court finds that there is plenty of evidence. He was consistent in his history to all of his physicians, Dr. Broussard, Dr. Morgan, every doctor that he was sent to see, as to how this injury occurred and the court finds that they did absolutely no investigation whatsoever to look into the matter. I found Mr. Poole's testimony to be very credible. I found his testimony throughout to be exceedingly credible. That does not mean that I think Mr. Coleman lied; I *49 think Mr. Coleman may not recall that an accident was mentioned. He knows he was hurt, he got somebody else to help him finish the work for that day and then later when Mr. Poole couldn't work any more, they sent him to Dr. Broussard. So there's no doubt in my mind that Mr. Poole was injured on April 10th in the course and scope of his employment.
Following an exhaustive review of the record and exhibits in this matter, we are unable to say the WO erred in determining that Mr. Poole sustained a work-related accident as defined by La. R.S. 23:1021(1). The WCJ made a specific finding that Mr. Poole's testimony was "exceedingly credible" and that there was sufficient evidence to prove that an accident occurred. This type of credibility determination is not to be second-guessed at the appellate level. The WCJ's ruling is reasonable and supported by the record.

CHOICE OF PHYSICIAN
With regard to the choice of physician issue, Guy Hopkins argues that the WO erred in concluding that Dr. Broussard was not Mr. Poole's choice of physician. According to Guy Hopkins, Mr. Poole had been treated by Dr. Broussard for over five years and had selected Dr. Broussard as his treating physician on two separate choice of physician forms. Thus, Guy Hopkins maintains that the WCJ's conclusion that Mr. Poole had not made a "knowing choice" of physician is clearly erroneous and should be reversed.[1]
Louisiana Revised Statutes 23:1121(B) provides as follows concerning an employees' right to choose a treating physician:
B. (1) The employee shall have the right to select one treating physician in any field or specialty. The employee shall have a right to the type of summary proceeding provided for in R.S. 23:1124(B), when denied his right to an initial physician of choice. After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval *50 for change to a treating physician in another field or specialty.
In finding that Mr. Poole did not make a knowing choice of physician in the instant case, the WCJ reviewed conflicting evidence regarding the selection of Dr. Broussard. The WCJ noted that since 1998, Dr. Broussard was Guy Hopkins' choice of physician and that each time Mr. Poole injured himself while working for Guy Hopkins, he was referred to Dr. Broussard for treatment. The WCJ further explained that although there were two signed choice of physician forms in the record, there was some question as to the authenticity of the signatures on those forms. Our review of the record reveals support for the many factual findings of the WCJ. In addition to resolving pure factual issues, much of the above discussion reveals credibility determinations, appropriate only at the trial court level. Thus, we will not disturb the WCJ's finding that Mr. Poole did not make a knowing choice of physician.

FAILURE TO PAY UNIVERSITY MEDICAL CENTER BILL
Guy Hopkins next contends the WG erred in awarding a $2,000.00 penalty and $3,000.00 in attorney fees to Mr. Poole for its failure to pay for Mr. Poole's medical treatment at University Medical Center ("UMC"). It asserts that the medical records and the testimony of the nurse who treated Mr. Poole clearly establishes that although Mr. Poole sought treatment for back pain at UMC, he denied any work-related injury associated with same. Thus, Guy Hopkins maintains it had sufficient information to reasonably controvert its liability for the costs of this treatment.
At the time of Mr. Poole's injury, La. R.S. 23:1201(F) provided for the assessment of penalties and attorney fees for each day that "all compensation or medical benefits remain unpaid." It also provided for an exemption from the assessment of penalties and attorney fees if "the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control."[2] A determination of whether an employer has failed to reasonably controvert a claim is a question of fact and is subject to the manifest error standard of review. Atwell v. First General Services, XXXX-XXXX, p. 13 (La.App. 1 Cir. 12/28/06), 951 So.2d 348, 357, writ denied, XXXX-XXXX (La.3/16/07), 952 So.2d 699.
In the instant case, the WO found that Mr. Poole's UMC bill was clearly related to his April 10, 2003 injury and that the medical treatment was reasonable and necessary. The WCJ concluded that the UMC bill should be paid by UMC and awarded Mr. Poole a $2,000.00 penalty and $3,000.00 in attorney fees, noting as follows:
*51 With regard to the University Medical Center bill, I do find that it is reasonable and necessary medical treatment and that it is related to the injury. Mr. Poole's benefits were terminated on August 3, 2003. He went to the UMC on August 8, 2003. His benefits had been terminated; his approval for surgery had been denied with Dr. Broussard; he had nowhere to go. He went to the only place that he could go. Now, the defendant has made much of the history that was given to the nurse there, the emergency nurse at the medical center wherein the emergency nurse stated that he asked Mr. Poole if he had suffered a trauma or excessive strain and Mr. Poole said no. Mr. Poole has a 10th grade education and that means that Mr. Poole made it through the 10th grade. Mr. Poole has admitted on the stand that he cannot read or write very well; we had a hearing on choice of physician where that became exceedingly clear; and he also does not have a great command of the English language.
The fact that when he sees the R.N., the nurse at the University Medical Center emergency room, and when the nurse asks him if this is the result of trauma and he says no, it is not surprising to this court that he does not understand what he's being asked. The E.R. nurse admitted in his deposition that he used the word "trauma". He did not say "did you injure your back" or "did you get hurt at work" or "did you get hurt at home". He did not bring it down to a simple level, so the court is of the opinion that there's no reason for the failure to pay the University Medical Center bill. It is reasonable and necessary medical treatment, it was not paid within 60 days of the filing of this 1008 which would put them on notice for sure that it should have been paid. The bill should be paid plus there is a $2,000 penalty for failure to pay that bill and the court is awarding $3,000 in attorneys fees. It is obvious that it is related. It is all dealing just with his back, the same part of the body that he had injured, and he had nowhere to go because his benefits had been terminated.
Considering the evidence presented, we conclude that the WCJ did not manifestly err in finding that Guy Hopkins had no objective reasons for failing to timely pay the UMC bill. Thus, the award of penalties and attorney fees under La. R.S. 23:1201(F) was proper.

TERMINATION OF BENEFITS
Finally, Guy Hopkins challenges the WCJ's $17,000.00 award of attorney fees to Mr. Poole, arguing that the WO erred in finding that it was arbitrary and capricious in terminating Mr. Poole's benefits on August 4, 2003.
At the time of Mr. Poole's injuries, attorney fees, but not penalties, were recoverable under La. R.S. 23:1201.2 if the employer or insurer arbitrarily and capriciously discontinued payment of benefits due.[3]Williams v. Rush Masonry, Inc., 98-2271, p. 5 (La.6/29/99), 737 So.2d 41, 44. This statute is penal in nature and is to be strictly construed. *52 Cooper v. St. Tammany Parish School Bd., 2002-2433, pp. 9-10 (La.App. 1 Cir. 11/7/03), 862 So.2d 1001, 1009, writ denied, XXXX-XXXX (La.4/23/04), 870 So.2d 300. The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact, and the trial court's finding shall not be disturbed absent manifest error. The crucial inquiry in making this determination is whether the employer had an articulable and objective reason to deny benefits at the time it took action. Authement v. Shappert Engineering, XXXX-XXXX, pp. 11-12 (La.2/25/03), 840 So.2d 1181, 1188-1189.
In the instant case, the WO found that Guy Hopkins was arbitrary and capricious in terminating Mr. Poole's benefits and awarded him $17,000.00 in attorney fees, noting as follows:
Also, Dr. Broussard was the defendant's choice of physician. That's where they have always sent Mr. Poole and Mr. Poole went. They cannot second guess their own doctor, they can not utilization review their own doctor, they cannot second medical opinion their own doctor and they tried to do both as soon as Dr. Broussard recommended surgery. You cannot do that.
I find that Guy Hopkins was arbitrary and capricious in terminating benefits on August 3, 2003. The only evidence they had to terminate benefits at that time was Dr. Morgan's report. Dr. Morgan's report, as I've already said, falls very short of being good evidence to base a decision to terminate benefits on. He is not the treating physician. They have doctor shopped in securing his opinion and the court finds that that is arbitrary and capricious.
I am awarding temporary total disability benefits from 8/3/2003 to date with legal interest and $17,000 in attorneys fees for their arbitrarily and capriciously terminating benefits. They were not questioning the accident at that time. The only grounds that I can see based upon the testimony of Ms. Haase  she had nothing in her file or in her testimony to me to show that they were denying benefits based upon a failure to believe that an accident happened at that time. It was strictly based on Dr. Morgan's report.
Now, normally if you have two doctors with conflicting opinions, that provides you some grounds to deny a claim, but not when they're your own doctor and not when the treating physician is your own choice of doctor. As I've already stated, you cannot doctor shop on your own side.
They had the best of both worlds at that time. They had the claimant going to their choice of doctor, but once Dr. Broussard decided to do surgery, they decided that they didn't like that and that's when they started trying to doctor shop out of that situation. That's why I find that they are arbitrary and capricious in terminating benefits.
Based on our review of the record herein, we cannot say the WO was clearly wrong in finding that Guy Hopkins was arbitrary and capricious in terminating Mr. Poole's benefits. Accordingly, we will not disturb the WCJ's award of $17,000.00 in attorney fees to Mr. Poole.

ANSWER TO APPEAL
Mr. Poole has answered the appeal and requested additional attorney fees for the work performed on appeal. Additional attorney fees are usually awarded on appeal when a party appeals, but obtains no relief, and the appeal has necessitated additional work on the opposing party's counsel, provided that the opposing party appropriately requests an increase. Atwell, XXXX-XXXX at 15, 951 So.2d *53 at 358. Based on these factors and the quality of work done by Mr. Poole's attorney on the appeal, an additional award of $2,500.00 is appropriate, and the judgment will be amended accordingly. See Roussell v. St Tammany Parish School Bd., 2004-2622, pp. 19-20 (La.App. 1 Cir. 8/23/06), 943 So.2d 449, 464: Luper v. Wal-Mart Stores, XXXX-XXXX, p. 14 (La. App. 1 Cir. 3/28/03), 844 So.2d 329, 338.

CONCLUSION
For the above and foregoing reasons, we amend the WCJ's judgment to reflect an additional award of $2,500.00 in attorney fees in favor of Mr. Poole for the work necessitated by this appeal. In all other respects, we affirm the WCJ's judgment and assess all costs associated with this appeal against Guy Hopkins.
AMENDED IN PART AND AFFIRMED AS AMENDED.
NOTES
[1] According to the record, this same issue had previously been considered by the WO prior to the trial of this matter. On April 1, 2004, Mr. Poole filed a motion to compel medical treatment, wherein he sought an order compelling Guy Hopkins to guarantee and pa/ for medical treatment by an orthopedic surgeon of Mr. Poole's choice. On May 12, 2004, the WCJ ruled that Mr. Poole had not previously had a choice of orthopedic surgeon and, thus, was entitled to an orthopedic surgeon of his choice. Following the WCJ's decision on Mr. Poole's motion, Guy Hopkins applied for supervisory review with this court, which application was denied. See Poole v. Guy Hopkins Construction, XXXX-XXXX (La.App. 1 Cir. 12/1/04) (unpublished writ action). Under the "law of the case" doctrine, an appellate court generally will not, on a subsequent appeal, reconsider its earlier ruling in the same case. But this discretionary doctrine only applies to parties and issues that were actually presented and decided by the appellate court. Mire v. Eatelcorp, Inc., 2004-2603, p. 7 (La.App. 1 Cir. 12/22/05), 927 So.2d 1113, 1117, writ denied, XXXX-XXXX (La.4/24/06), 926 So.2d 549. Generally, when an appellate court considers arguments made in supervisory writ applications, the court's disposition on the issue considered becomes "law of the case" foreclosing relitigation of that issue either at the trial court on remand or in the appellate court on a later appeal. However, the denial of a writ application creates a different situation. A denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when an appeal is taken from a final judgment. Display South, Inc. v. Express Computer Supply, Inc., XXXX-XXXX, p. 4 n. 3 (La.App. 1 Cir. 5/4/07), 961 So.2d 451, 453 n. 3.
[2] At all times pertinent hereto, La. R.S. 23:1201(F) provided as follows:

F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Louisiana Revised Statutes 23:1201(F) has since been amended by 2003 La. Acts, No. 1204, § 1, effective August 15, 2003.
[3] At the time in question, La. R.S. 23:1201.2 provided, in pertinent part, as follows: "Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims." Louisiana Revised Statutes 23:1201.2 was repealed by 2003 La. Acts, No. 1204, § 2, effective August 15, 2003. The substance of former La. R.S. 23:1201.2 is now addressed in La. R.S. 23:1201(I).