WHIPPLE, J.
 

 |2In this workers’ compensation case, the employer appeals a judgment awarding the injured employee supplemental earnings benefits, vocational rehabilitation services, and mileage reimbursement and assessing various penalties and attorney’s fees. For the following reasons, we reverse in part, amend in part, and affirm as amended.
 

 FACTS AND PROCEDURAL HISTORY
 

 Elgrie Lewis was employed by Temple Inland as a process operator and had been employed by Temple Inland for thirty-three years at the time of the accident at issue. On July 5, 2009, Elgrie Lewis tripped over a hose while working for Temple Inland and fractured his right ankle. Lewis was treated by Dr. H. Reiss Plauche, an orthopedic surgeon, and he ultimately underwent two surgeries, an open reduction with internal fixation on July 8, 2009, and open hardware removal on January 13, 2010. Dr. Plauche restricted Lewis from work through the date of the second surgery on January 13, 2010.
 

 Meanwhile, Dr. Plauche recommended that Lewis undergo a functional capacity evaluation (FCE). The evaluation, performed on December 10, 2009, indicated that Lewis could return to light- to medium-duty work for six to eight hours a day with various restrictions. The restrictions included working a six- to eight-hour workday, occasional lifting of up to thirty-four pounds, occasional modified squatting,
 
 [1]
 
 occasional climbing and use of stairs, and standing for up to six hours a day.
 

 On February 9, 2010, a rehabilitation conference was held with the Temple Inland case manager, Lewis, and Dr. Plauche
 
 *56
 
 in attendance. |sDespite the fact that the physical requirements of Lewis’s job at Temple Inland exceeded the restrictions set forth in the FCE,
 
 [2]
 
 the parties agreed that Lewis would attempt to go back to work, although Temple Inland would not make a job within his restrictions available to him.
 
 [3]
 
 Dr. Plauche considered this to be a conditional release to return to work to determine if Lewis could tolerate the job.
 

 Thereafter, on February 15, 2010, Lewis attempted to return to work with a walking cane, which he had been using since the surgery and the use of which had been approved by Dr. Plauche for pain relief. However, taking the position that the release to return to work did not indicate that Lewis was cane-dependent, and that Temple Inland only allows employees to return to work when they can work at full-duty capacity, the safety manager informed Lewis that he would not be allowed to enter the mill with the cane. Thus, Lewis was not allowed to return to his job that day. Temple Inland subsequently terminated Lewis’s weekly indemnity benefits as of that date, taking the position that he had been released to full duty by Dr. Plauche.
 

 Lewis then returned to Dr. Plauche on February 22, 2010. At that visit, Lewis related to Dr. Plauche that his boss would not allow him to use the cane at work, and that there was no diminished work schedule and no adjustments at work. While Dr. Plauche believed that Lewis could perform work within the FCE restrictions, because nothing within those restrictions |4was available to Lewis at Temple Inland, he again restricted Lewis from work on that date.
 

 Despite the fact that Dr. Plauche again restricted Lewis from work, Temple Inland refused to reinstate his weekly indemnity benefits. Accordingly, on March 12, 2010, Lewis filed a Disputed Claim for Compensation, seeking, among other things, reinstatement of weekly indemnity benefits and vocational rehabilitation services. Lewis later amended his claim to request reimbursement for mileage expenses and penalties and attorney’s fees for failure to timely pay mileage reimbursement, failure to pay indemnity benefits, and failure to timely provide Lewis with the FCE report. Subsequently, Lewis filed a second Disputed Claim for Compensation, seeking penalties and attorney’s fees pursuant to LSA-R.S. 23:1208, based on certain fraudulent misrepresentations of the employer, Temple Inland. This claim was based on the statements of Robin Chapman and Timony Winstead, the claims adjuster and supervisor of the nurse case manager handling the claim for Temple Inland. This second claim was consolidated with his prior claim, and both matters proceeded to trial together.
 

 Following a trial on October 7, 2010, and November 19, 2010, the workers’ compensation judge rendered judgment dated January 11, 2010,
 
 [4]
 
 in favor of Lewis as follows:
 

 
 *57
 
 (1) ordering Temple Inland to pay Lewis $1,070.25 in mileage reimbursement, together with interest, a penalty of $2,000.00, and attorney’s fees of $5,000.00 for failure to reasonably controvert the claim for mileage reimbursement;
 

 ls(2) ordering Temple Inland to pay Lewis supplemental earnings benefits (SEBs) in the amount of $2,366.00 per month, retroactive to February 15, 2010, and continuing, together with interest, and a penalty of $2,000.00 and attorney’s fees of $5,000.00 for failure to reasonably controvert Lewis’s claim for SEBs;
 

 (3) ordering Temple Inland to provide vocational rehabilitation services to Lewis and assessing a $2,000.00 penalty and $5,000.00 in attorney’s fees for failure to provide prompt vocational rehabilitation services;
 

 (4) ordering Temple Inland to pay Lewis a $250.00 penalty and $1,000.00 in attorney’s fees for failure to timely provide Lewis with a copy of the FCE report;
 

 (5) ordering Timony Winstead and Robin Chapman to each pay a $1,000.00 civil penalty to the Kids Chance Scholarship Fund, Louisiana Bar Foundation, for violating the provisions of LSA-R.S. 23:1208; and
 

 (6) ordering Temple Inland to pay costs.
 

 From this judgment, Temple Inland appeals, contending that the workers’ compensation judge erred in: (1) assessing a penalty and attorney’s fee for the failure to provide prompt vocational rehabilitation services; (2) assessing a penalty and attorney’s fee for failure to reasonably controvert Lewis’s claim for SEBs; (3) failing to address Temple Inland’s retirement argument; and (4) finding that Robin Chapman and Timony Winstead violated the provisions of LSA-R.S. 23:1208. Lewis answered the appeal, contending that the workers’ compensation judge erred in failing to award penalties and attorney’s fees pursuant to LSA-R.S. 23:1201(1) for Temple Inland’s improper termination of benefits and seeking an additional award of attorney’s fees for the work performed on appeal.
 

 ^PENALTIES AND ATTORNEY’S FEES
 

 Regarding penalties and attorney’s fees for failure to commence payment of benefits, LSA-R.S. 23:1201(F) provides, in pertinent part:
 

 Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid ..., together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.... Penalties shall be assessed in the following manner:
 

 [[Image here]]
 

 (2) This Subsection shall not apply if the claim is reasonably controverted....
 

 Thus, pursuant to LSA-R.S. 23:1201(F), an employer or insurer may be assessed with penalties and attorney’s fees for failure to timely pay weekly indemnity or medical benefits where the employer or insurer has failed to reasonably controvert
 
 *58
 
 the claim.
 
 Clark v. Godfrey Knight Farms, Inc.,
 
 2008-1723 (La.App. 1st Cir.2/13/09), 6 So.3d 284, 297,
 
 writ denied,
 
 2009-0562 (La.5/29/09), 9 So.3d 163. A claim is reasonably controverted when the employer has sufficient factual and/or medical information to counter evidence presented by the employee.
 
 Clark,
 
 6 So.3d at 297.
 

 With regard to the discontinuation of benefits, on the other hand, LSA-R.S. 23:1201(1) applies and provides, in pertinent part:
 

 Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand dollars and a reasonable attorney fee for the prosecution and collection of such claims....
 

 Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of |7seemingly unfounded motivation. The crucial inquiry is whether the employer has an articulated and objective reason for discontinuing benefits at the time it took that action.
 
 Life Flight of New Orleans v. Homrighausen,
 
 2005-2538 (La.App. 1st Cir.12/28/06), 952 So.2d 45, 52,
 
 writ denied,
 
 2007-0558 (La.5/4/07), 956 So.2d 615.
 

 Penalties and Attorney’s Fees for Failure to Initiate Vocational Rehabilitation Services
 
 (Temple Inland’s Assignment of Error No. 1)
 

 In its first assignment of error, Temple Inland contends that the workers’ compensation judge erred in assessing a penalty and attorney’s fees for its failure to initiate vocational rehabilitation services where the Louisiana Workers’ Compensation Act does not provide for a sanction on the employer or insurer for failure to timely provide such services.
 

 The Louisiana statutory scheme provides that when the employee has suffered a work injury, which precludes him from earning wages equal to the wages earned prior to the injury, the employee “shall be” entitled to prompt rehabilitation services. LSA-R.S. 23:1226(A). However, while LSA-R.S. 23:1226 provides for the reduction of the employee’s weekly indemnity benefits for refusal to accept rehabilitation, see LSA-R.S. 23:1226(B)(3)(c), it does not specifically authorize, or preclude, an assessment of a penalty or attorney’s fees against the employer for failure to provide such services.
 
 See Dubois v. Louisiana Forest Industries, Inc.,
 
 98-895 (La.App. 3rd Cir.12/9/98), 722 So.2d 409, 417,
 
 writ denied,
 
 99-0049 (La.2/26/99), 738 So.2d 586. Thus, the legal question presented in this assignment of error is whether the penalty and attorney’s fee provisions of LSA-R.S. 23:1201 apply to an employer’s failure to initiate vocational rehabilitation services.
 

 The statutory provisions governing the assessment of penalties and attorney’s fees were amended in 2003. Prior to amendment by La. Acts | s2003, No. 1204, § 1, subsection (F) of LSA-R.S. 23:1201 similarly provided for penalties and attorney’s fees based upon the employer’s failure to pay “compensation or medical benefits” where the claim was not reasonably controverted. On the other hand, LSA-R.S. 23:1201.2, prior to repeal by La. Acts 2003, No. 1204, § 2 provided only for attorney’s fees where the employer arbitrarily or capriciously discontinued payment of “claims due.”
 
 Poole v. Guy Hopkins Construction,
 
 2007-0079 (La.App. 1st Cir.11/2/07), 984 So.2d 43, 51. With the repeal of LSA-R.S. 23:1201.2, the legislature also enacted subsection (I) of LSA-
 
 *59
 
 R.S. 23:1201, as set forth above, which subjects the employer to both penalties and attorney’s fees for the arbitrary and capricious discontinuance of “claims due.” Thus, one notable change effected by the 2003 amendments was the addition of a claim for penalties for the arbitrary and capricious discontinuance of “claims due.” However, as reflected in the jurisprudence both prior and subsequent to the 2003 amendment, the courts have recognized a distinction between the failure to initiate payment as opposed to discontinuance of payment, as well as a distinction between payment of “compensation and medical benefits” and payment of “claims due.”
 

 As noted by the Louisiana Supreme Court in
 
 Chelette v. Riverwood International USA, Inc.,
 
 2003-1483 (La.10/17/03), 858 So.2d 412, 413 (per curiam), subsection (F) of LSA-R.S. 23:1201 addresses penalties and attorney’s fees where the employer fails to commence payment of certain benefits. Specifically, the penalties and attorney’s fees available pursuant to LSA-R.S. 23:1201(F) apply to the failure to commence payment of weekly indemnity benefits and medical benefits, not to the failure to initiate vocational rehabilitation.
 
 See Chelette,
 
 858 So.2d at 413, and
 
 Clark,
 
 6 So.3d at 297.
 

 |aOn the other hand, while the term “claims due,” as set forth in LSA-R.S. 23:1201(1), has been more broadly interpreted to include vocational rehabilitation services, the language of LSA-R.S. 23:1201(1) is structured such that it addresses only the arbitrary and capricious discontinuance of payment of “claims due,” and not the failure to commence payment of claims such as vocational rehabilitation.
 
 [5]
 

 See Haynes v. Williams Fence and Aluminum,
 
 2002-0442 (La.4/21/03), 851 So.2d 917, 918 (on rehearing) (per curiam) (holding that the phrase “claims due” in prior LSA-R.S. 23:1201.2 included claims for vocational rehabilitation), and
 
 Life Flight of New Orleans,
 
 952 So.2d at 52 (affirming a $2,000.00 penalty for the arbitrary and capricious termination of vocational rehabilitation services).
 

 In the instant case, Temple Inland failed to commence vocational rehabilitation services for Lewis. Thus, because this claim arose from the failure to commence, rather than the discontinuance of, payment of a claim due, we are constrained to find that the penalty and attorney’s fee provisions of LSA-R.S. 23:1201(1), governing discontinuance of payment of a claim due, are not applicable to this claim. Moreover, the provisions of LSA-R.S. 23:1201(F), governing failure to commence payment, also do not apply, |inbecause this claim involves a request for vocational rehabilitation ser
 
 *60
 
 vices, rather than weekly indemnity or medical benefits.
 

 While we candidly recognize that a statutory framework where penalties and attorney’s fees are recoverable for the arbitrary and capricious discontinuance of vocational rehabilitation services, but are not recoverable for the failure to initiate or commence vocational rehabilitation appears to be patently inequitable and would seemingly encourage employers to simply refuse to initiate such services, we are required to apply the statutes as enacted by the legislature. Moreover, statutes providing for penalties and attorney’s fees are penal in nature and must be strictly construed.
 
 Life Flight of New Orleans,
 
 952 So.2d at 52. Accordingly, after strictly construing and applying the clear language of LSA-R.S. 23:1201(F), as we are required to do, we are constrained to conclude that the workers’ compensation judge committed legal error in awarding penalties and attorney’s fees for Temple Inland’s failure to commence vocational rehabilitation services for Lewis. Accordingly, that portion of the judgment must be vacated.
 

 This assignment of error has merit.
 

 Penalties and Attorney’s Fees for Failure to Reasonably Controvert Claim for SEBs
 
 (Temple Inland’s Assignment of Error No. 2)
 

 In this assignment of error, Temple Inland challenges the workers’ compensation judge’s factual finding that it failed to reasonably controvert Lewis’s entitlement to SEBs. Specifically, Temple Inland contends that although Dr. Plauche’s February 22, 2010 report restricted Lewis to work within the restrictions set forth in the FCE, Dr. Plauche also completed a return-to-work slip that same date in which he stated that Lewis could perform “no work until further notice.” Thus, Temple Inland argues that based on the February 22, 2010 report only, SEBs would be appropriate, h,However, if it referred to the slip showing that Lewis could perform “no work,” then temporary total disability benefits (TTDs) would have been appropriate. Accordingly, Temple Inland contends that its failure to pay was justified and excusable, because it was “unfair for the Workers’ Compensation Court to expect the [defendants to have concluded that [Lewis] was entitled to [SEBs],” as “[t]he confusion was such that [it] could not have reasonably known the type of benefits, if any, that [Lewis] was owed.” Temple Inland argues that it was accordingly justified in paying nothing to Lewis and was “reasonable in not initiating [SEBs] until clarification had been obtained regarding disability status and ability to work from Dr. Plauche.” On review, after considering the applicable legal precepts and the record before us, we reject these arguments as meritless.
 

 The workers’ compensation judge’s determination of whether an employer or insurer should be cast with penalties and attorney’s fees is essentially a question of fact subject to the manifest error or clearly wrong standard of review.
 
 See Clark,
 
 6 So.3d at 297, and
 
 Life Flight of New Orleans,
 
 952 So.2d at 52. As set forth above, Lewis underwent an FCE on December 10, 2009, which documented that he could perform light- to medium-duty work for six to eight hours a day, with various restrictions, and that the requirements of Lewis’s pre-accident job at Temple Inland exceeded those restrictions. Nonetheless, at a February 9, 2010 rehabilitation conference attended by Lewis, the Temple Inland case manager and Dr. Plauche, the parties agreed that Lewis would be allowed to attempt to return to work despite the fact that the physical requirements of Lewis’s job at Temple Inland exceeded the restrictions set forth in the FCE. The
 
 *61
 
 record further reveals that Dr. Plauche considered this to be a conditional release to | ^return to work to see if Lewis could tolerate the job, and that he believed that Temple Inland would accommodate Lewis.
 

 However, Dr. Plauche noted that Lewis attempted to return to work with a cane, and that this became “a big issue.”
 
 [6]
 
 Thus, although he stated in his February 22, 2010 report that Lewis could work within the physical restrictions outlined in the December 10, 2009 FCE, Dr. Plauche again restricted Lewis from work that date, considering: (1) the only type of work then available to Lewis with Temple Inland exceeded his physical restrictions, and (2) that Lewis would probably need retraining to be able to perform some other type of job.
 

 With regard to Temple Inland’s explanation that its conduct was reasonable, and that it justifiably discontinued weekly indemnity benefits because Dr. Plauche’s February 22, 2010 report and return-to-work restriction purportedly created “confusion” as to whether Lewis was entitled to TTDs or SEBs, we again find no merit. In rejecting the explanation offered by Temple Inland, we note that the law is clear that where an employer fails to properly investigate a claim, it subjects itself to penalties and attorney’s fees.
 
 Guillory v. Bofinger’s Tree Service,
 
 2006-0086 (La.App. 1st Cir.11/3/06), 950 So.2d 682, 692. To simply choose to discontinue any form of weekly indemnity benefit based on alleged “confusion” was not warranted under the known facts herein. Thus, considering the foregoing and the record as a whole, including the credibility determinations made by the factfinder below in weighing the testimony offered to support Temple Inland’s defense and to explain its action, we not only find no manifest error in the workers’ compensation judge’s finding | ,3that Temple Inland failed to reasonably controvert Lewis’s continued entitlement to weekly indemnity benefits, but we also conclude that its actions in discontinuing payment of weekly benefits were arbitrary and capricious.
 
 [7]
 

 This assignment of error lacks merit.
 

 VOLUNTARY WITHDRAWAL FROM THE WORKFORCE (Temple Inland’s Assignment of Error No. 3)
 

 In its third assignment of error, Temple Inland contends that the workers’ compensation judge erred in failing to address its argument that Lewis had voluntarily withdrawn from the workforce and, thus, was retired. At the outset, we note that the mere fact that the workers’ compensation judge’s reasons for judgment are silent as to the retirement argument raised by Temple Inland does not reflect or establish that the judge failed to consider the argument. Rather, we view the workers’ compensation judge’s silence as to this argument presented by Temple Inland as a rejection of the argument.
 
 See Anthony’s Auto Sales, Inc. v. Shephard,
 
 600 So.2d 125, 128 (La.App. 2nd Cir.1992), and
 
 Reilly v. Gene Ducote Volkswagen, Inc.,
 
 549 So.2d 428, 433 (La.App. 5th Cir.1989). Thus, on appeal, we consider the issue before us to be whether the workers’ compensation judge erred in rejecting the argument that Lewis had voluntarily retired from the workforce.
 

 Louisiana Revised Statute 23:1221(3)(d)(iii), which addresses an em
 
 *62
 
 ployee’s entitlement to SEBs when the employee retires, provides:
 

 (d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
 

 [[Image here]]
 

 |14(iii) When the employee retires; however, the period during which supplemental earnings benefits may be payable shall not be less than one hundred four weeks.
 

 The “retirement” referred to in LSA-R.S. 23:1221(3)(d)(iii) is not the failure to work because of disability. Instead, it refers to the worker who has no intention of returning to work regardless of disability.
 
 See Allen v. City of Shreveport,
 
 637 So.2d 123, 126-127 (La.1994);
 
 Peters v. General Motors Corporation,
 
 39,279 (La.App. 2nd Cir.1/26/05), 892 So.2d 717, 723. Where a worker has retired from a heavy work duty job, but is still willing to take on light duty employment within the scope of the limitations imposed by his disabilities, then that worker is not deemed to have withdrawn from the workforce and is not considered to have retired under that statute.
 
 Oestringer v. City of New Orleans,
 
 2003-2213 (La.App. 4th Cir.6/2/04), 876 So.2d 240, 243. Whether a worker has retired within the meaning of LSA-R.S. 23:1221(3)(d)(iii) is a question of fact reviewable on appeal under the manifest error standard of review.
 
 Palisi v. City of New Orleans Fire Department,
 
 95-1455 (La.App. 4th Cir.3/12/97), 690 So.2d 1018, 1048,
 
 writs denied,
 
 97-0953, 97-1293 (La.6/20/97), 695 So.2d 1352, 1363.
 

 In support of its argument that Lewis has “retired” within the meaning of LSA-R.S. 23:1221(3)(d)(iii), Temple Inland contends that Lewis’s trial testimony that he would not accept any employment paying only ninety percent of his pre-injury wage and, additionally, his decision to accept early retirement from Temple Inland in August 2010 demonstrate an intention to permanently withdraw from the workforce. We disagree.
 

 At trial, Lewis testified that he does want to go back to work, but that he cannot physically perform his pre-injury job because of his ankle injury. He further testified that he had requested that Temple Inland provide him |15with vocational rehabilitation so that he could obtain a new job, but that Temple Inland had not authorized those services.
 

 When questioned on cross-examination as to whether he would be willing to return to work at Temple Inland or another employer at a rate of ninety percent of his pre-injury wages, Lewis did respond, “no.” Lewis explained that his previous co-workers at Temple Inland had received a raise since he had been off of work, and he indicated that he would accept a job at Temple Inland or elsewhere if the wage rate was ninety percent of what his pre-injury job presently pays. However, as further reflected in Lewis’s testimony, Temple Inland had fired him and had made no offers to him to return to any job. While Lewis’s belief that he should not have to accept less than ninety percent of the current wage rate of his former job upon his return to work perhaps reveals a misunderstanding of the workers’ compensation scheme, his misunderstanding does not establish or equate to proof of an intent to permanently withdraw from the workforce. Thus, we find no manifest error in the workers’ compensation judge’s rejection of this argument by Temple Inland.
 

 Moreover, regarding Lewis’s decision to accept early retirement from Temple Inland, we note that an employee’s decision to accept early retirement does
 
 *63
 
 not necessarily equate to retirement as contemplated by LSA-R.S. 23:1221(3)(d)(iii).
 
 See Tynes v. Gaylord Container Corporation,
 
 2002-0519 (La.App. 1st Cir.2/14/03), 844 So.2d 80, 88-89,
 
 writ denied,
 
 2003-0769 (La.5/9/03), 843 So.2d 404. Clearly, Lewis was unable to return to his previous job due to his work-related injury. Nonetheless, Temple Inland terminated all weekly indemnity benefits effective February 15, 2010, and then subsequently terminated Lewis’s employment effective July 15, 2010. Moreover, Temple Inland refused to authorize vocational | ^rehabilitation for Lewis to assist him in finding employment within his physical limitations, leaving Lewis in a position where he was receiving no compensation payments or income. Accordingly, we find no manifest error in the workers’ compensation judge’s rejection of Temple Inland’s argument that Lewis’s decision to accept early retirement from Temple Inland in August 2010, after thirty-three years of employment with Temple Inland, was a truly voluntary decision or that this demonstrated a decision to permanently withdraw from the workforce.
 
 [8]
 

 Thus, we also find no merit to this assignment of error.
 

 LSA-R.S. 23:1208 FRAUDULENT MISREPRESENTATION (Temple Inland’s Assignment of Error No. 4)
 

 In its final assignment of error, Temple Inland contends that the workers’ compensation judge manifestly erred in finding that Robin Chapman, the claims adjuster handling Lewis’s claim for Temple Inland, and Timony Winstead, the regional manager of the company providing case management services for Temple Inland who supervised nurse case manager Tara Bordelon, violated the provisions of LSA-R.S. 23:1208 with regard to Lewis’s claim for mileage reimbursement for travel to and from his medical appointments. While acknowledging that Chapman and Winstead made untruthful and inaccurate statements in affidavits, Temple Inland nonetheless argues that there “was never a willful intent” to defeat Lewis’s entitlement to benefits.
 

 The workers’ compensation statutory scheme provides for the imposition of civil penalties when a person, for the purpose of defeating any workers’ compensation benefit or payment, willfully makes a false statement 117or representation. LSA-R.S. 23:1208(A)
 
 &
 
 (D);
 
 Davis v. Farm Fresh Food Supplier,
 
 2003-1381 (La.App. 1st Cir.5/14/04), 879 So.2d 215, 221. Additionally, LSA-R.S. 23:1208 makes it sanctionable for “any person, whether present or absent, directly or indirectly to aid and abet an employer” in willfully making a false statement or representation. LSA-R.S. 23:1208(B)
 
 &
 
 (D). The statute is broadly worded and encompasses any false statement or misrepresentation made to anyone when made willfully or deliberately for the purpose of obtaining or defeating benefits.
 
 Magee v. Abek, Inc.,
 
 2004-2554 (La.App. 1st Cir.4/28/06), 934 So.2d 800, 808,
 
 writ denied,
 
 2006-1876 (La.10/27/06), 939 So.2d 1287. The relationship between the false statement and the pending claim is probative in determining whether the statement was made willfully for the purpose of defeating benefits.
 
 Davis,
 
 879 So.2d at 221.
 

 In the instant case, Lewis’s claim for penalties due under LSA-R.S. 23:1208 centered around his claim for mileage reimbursement and Temple Inland’s assertion that he made no such request for mileage
 
 *64
 
 reimbursement prior to August of 2010. Lewis contended in his first amending and supplemental Disputed Claim for Compensation that Temple Inland had failed to timely pay his mileage reimbursement and, accordingly, that he was entitled to penalties and attorney’s fees pursuant to LSA-R.S. 23:1201(F). In response, Temple Inland answered and denied the allegations of the amended claim.
 

 Additionally, in preparation of its defense against this claim by Lewis, Temple Inland obtained affidavits from Chapman and Winstead. In her affidavit, Winstead attested that she had reviewed Bordelon’s case management file for Lewis, and that there were no mileage logs or mileage reimbursement requests for the period of July 7, 2009 through February 9, |1S2010. Similarly, Chapman attested under oath that she had “reviewed the complete claims file and notes for Elgrie Lewis,” and that “there is no mileage reimbursement request or mileage log for the period of July 7, 2009 through February 9, 2010 contained therein until on or about August 24, 2010,” when it was forwarded to her by defense counsel. Chapman further attested that if such mileage reimbursement requests had been submitted by Lewis prior to that time, these would have been placed in his claims file. Temple Inland listed these affidavits in its Witness and Exhibit List filed in the proceedings below on October 7, 2010, the day of trial. However, at the commencement of trial, counsel for Temple Inland sought to withdraw the two affidavits from its defense exhibits, prompting Lewis’s counsel to move for their introduction as plaintiffs exhibits. Defense counsel objected to plaintiffs counsel’s request to be allowed to introduce the affidavits, stating that he had just been informed by plaintiffs counsel that there was a claim for mileage reimbursement in Lewis’s claims file, and that the two affiants would “repudiate their statement[s].” Ultimately, however, the workers’ compensation judge recognized that these affidavits were highly relevant and probative and allowed plaintiffs counsel to introduce the affidavits. In further support of his LSA-R.S. 23:1208 claim, Lewis also introduced into evidence the claims file maintained by Temple Inland’s agents, which had been produced by defense counsel and furnished to plaintiffs counsel in response to discovery requests, and which clearly revealed therein that Lewis had submitted requests for mileage reimbursement as early as October 2, 2009, the date on which nurse case manager Tara Borde-lon had faxed the request to Chapman.
 

 Considering the foregoing, and especially considering the clear relationship between the blatantly false statements made by Chapman andJ^Winstead and the relevance of this information to the determination of Lewis’s claim against Temple Inland for unwarranted failure to timely pay mileage reimbursement, we find no error in the workers’ compensation judge’s ultimate conclusion that these were false statements and were made willfully or deliberately for the purpose of defeating Lewis’s claim.
 
 See Davis,
 
 879 So.2d at 221.
 

 REFORMATION OF THE JUDGMENT
 

 Although not raised by the parties, we note, however, that the portion of the judgment assessing LSA-R.S. 23:1208 penalties was rendered only against Chapman and Winstead, who do not appear to have been named as defendants, nor apparently were served with Lewis’s disputed claim wherein he sought these penalties. Pursuant to LSA-C.C.P. art. 2002, if a judgment is rendered against a defendant who has not been served and has not entered a general appearance, that judgment is an absolute nullity and can be collaterally attacked by an adversely af
 
 *65
 
 fected party at any time.
 
 [9]
 
 However, given the record as it presently exists herein, and because the parties have not been afforded the opportunity to brief this issue,
 
 see generally Wooley v. Lucksinger,
 
 2009-0571, 2009-0584, 2009-0585, 2009-0586 (La.4/1/11), 61 So.3d 507, 562-563, we decline to vacate the portion of the judgment rendered only against these individuals.
 

 As noted above, on appeal, only Temple Inland has challenged this portion of the judgment. Further, its challenge is based solely on the merits,
 
 [2qie.,
 
 whether the “factual finding of fraud on behalf of the defendants” should be allowed to stand. Herein, Lewis sought penalties against defendant Temple Inland based on its acts, including its reliance on the misrepresentations of its agents and representatives, namely, the adjuster and the supervisor of the nurse case manager, who were handling Lewis’s workers’ compensation claim for Temple Inland, and who executed the untruthful affidavits to be used by Temple Inland in its defense. However, Lewis did not seek judgment against those individuals personally.
 

 Thus, given that the record before us reflects that these individuals were acting as agents for and on behalf of Temple Inland, in the interests of justice, we amend the judgment to provide that the LSA-R.S. 23:1208 penalties are assessed against Temple Inland as well, as the party at whose behest the affidavits were confected and on whose behalf the false statements were made.
 
 See Davis,
 
 2003-1381 (La.App. 1st Cir.5/14/04), 879 So.2d 215, 218-219 (wherein the false statement of the injured employee’s “boss,” Lionel Dufour, resulted in the employer, Farm Fresh Food Supplier, Inc., being held liable for the R.S. 23:1208 penalty).
 
 [10]
 

 LEWIS’S ANSWER TO THE APPEAL
 

 In his answer to the appeal, Lewis contends that the workers’ compensation judge erred in failing to award the maximum penalties allowed by LSA-R.S. 23:1201(1) and appropriate attorney’s fees for Temple Inland’s improper discontinuance of weekly indemnity benefits. He also 12i seeks an additional award of attorney’s fees for the work performed on appeal.
 

 With regard to penalties and attorney’s fees for Temple Inland’s discontinuance of weekly compensation benefits, as reflected in reasons for judgment, the workers’ compensation judge assessed $2,000.00 in penalties and $5,000.00 in attorney’s fees for Temple Inland’s “failure to reasonably controvert” Lewis’s claim for SEBs. In doing so, the workers’ compensation judge applied the standard set for in LSA-R.S.
 
 *66
 
 23:1201(F), for the imposition of penalties and attorney’s fees based on the employer’s failure to commence payment of weekly indemnity benefits,
 
 ie.,
 
 failure to reasonably controvert the claim.
 
 See Chelette,
 
 858 So.2d at 413. However, because Lewis was already receiving weekly indemnity benefits, we agree with Lewis that LSA-R.S. 23:1201(1), which governs the discontinuance of payment of benefits, was the appropriate statute to be applied to this claim. Subsection (I) of LSA-R.S. 23:1201 provides for a penalty of up to $8,000.00 and a reasonable attorney’s fee when such discontinuance is found to be arbitrary, capricious, or without probable cause. Accordingly, we agree that the workers’ compensation judge committed legal error by applying the wrong standard to determine Lewis’s entitlement to penalties and attorney’s fees for the discontinuance of weekly compensation benefits and, thus, in limiting the penalty assessment to the $2,000.00 cap provided for therein.
 

 As stated above in our discussion of Temple Inland’s second assignment of error, considering the facts known by Temple Inland at the time, we conclude Temple Inland was arbitrary and capricious and acted without actual or legal cause in discontinuing all weekly compensation benefits under the pretext of purported “confusion” as to whether Lewis was Identified to receive TTDs or SEBs. Accordingly, we amend the portion of the judgment assessing the $2,000.00 penalty against Temple Inland for its arbitrary and capricious discontinuance of Lewis’s weekly compensation benefit to increase the award to Lewis to $8,000.00.
 
 See Lanthier v. Family Dollar Store,
 
 2006-779 (La.App. 3rd Cir.11/2/06), 942 So.2d 732, 736-737. However, we find that the attorney’s fee award of $5,000.00 was appropriate and, thus, decline to increase that amount.
 

 Finally, with regard to Lewis’s request for additional attorney’s fees for work performed on appeal, this court has held that such an increase is appropriate when the employer appeals, obtains no relief, and the appeal necessitates additional work for the employee’s counsel, provided that the employee properly requests the increase.
 
 Guillory,
 
 950 So.2d at 694. In the instant case, Temple Inland has prevailed, in part, on appeal,
 
 ie.,
 
 with regard to its claims that the assessment of penalties and attorney’s fees for Temple Inland’s failure to initiate vocational rehabilitation services is not provided for in the statute. Accordingly, an award of additional attorney’s fees to Lewis for work performed on appeal is not appropriate herein.
 

 CONCLUSION
 

 For the above and foregoing reasons, the portion of the January 11, 2010 judgment ordering Temple Inland to pay a $2,000.0 penalty and $5,000.00 in attorney’s fees for its failure to provide prompt rehabilitation services is hereby reversed. The portion of the January 11, 2010 judgment ordering Timony Winstead and Robin Chapman to each pay a $1,000.00 civil penalty to the Kids Chance Scholarship Fund, Louisiana Bar Foundation, for violating the provisions of LSA-R.S. 23:1208 is amended to provide that Temple Inland shall be jointly liable for the $2,000.00 civil penalty due to the Kids Chance Scholarship Fund, Louisiana Bar [^Foundation, for the LSA-R.S. 23:1208 violation. The portion of the January 11, 2010 judgment ordering Temple Inland to pay a maximum penalty for its failure to reasonably controvert Lewis’s claim for supplemental earnings benefits is hereby amended to provide that Temple Inland is ordered to pay a penalty of $8,000.00 for its arbitrary and capricious discontinuance of all weekly
 
 *67
 
 compensation benefits to Lewis. In all other respects, the judgment is affirmed. All costs are assessed against defendant, Temple Inland.
 

 REVERSED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED.
 

 [1]
 

 . According to the FCE, Lewis was able to accomplish only a partial squat due to pain.
 

 [2]
 

 . The job description for Lewis’s job at Temple Inland indicated that in a typical work day, which required a 12-hour shift, Lewis was required to stand for 8 hours, walk for 3 hours, occasionally lift up to 100 pounds, occasionally carry up to 50 pounds, and frequently squat and climb.
 

 [3]
 

 . Cynthia Lee, Temple Inland's occupational health nurse, testified that Temple Inland had a full-duty-only return-to-work policy, meaning that it does not offer transitional duty or partial return to work. Thus, while there are light- and medium-duty job positions at Temple Inland, Lewis would only be allowed to return to his job position at the time of the accident, which Lee stated was heavy duty.
 

 [4]
 

 .Although the judgment is dated January 11, 2010, it is clear from the record that it was actually rendered on January 11, 2011.
 

 [5]
 

 . We note that in
 
 Scott v. Autozone # 0208,
 
 2005-1948 (La.App. 1st Cir.9/20/06), 943 So.2d 1177, another panel of this court summarily affirmed an OWC award, which included an award of penalties for failure to order vocational rehabilitation. However, because the opinion is a summary opinion, it is unclear whether the employer therein challenged the assessment of penalties or attorney's fees and, more specifically, whether it set forth a legal challenge as to whether such an assessment was allowable under the statutory scheme for penalties and attorney’s fees.
 

 Also, in
 
 Lollis v. Shaw Global Energy Services,
 
 2007-395 (La.App. 3rd Cir.10/3/07), 966 So.2d 1118, 1126-1127,
 
 writ not considered,
 
 2007-2169 (La.1/7/08), 973 So.2d 742, the Third Circuit Court of Appeal affirmed an award of $2,000.00 in penalties and $7,500.00 in attorney's fees for failure to provide vocational rehabilitation services. However, it appears from the opinion that the employer challenged only the workers’ compensation judge’s determination that it had not reasonably controverted the employee’s entitlement to vocational rehabilitation services, and not whether such an award was legally proper under the statutory framework of the Workers' Compensation Act.
 

 [6]
 

 . Dr. Plauche stated that use of the cane was beneficial in helping Lewis take pressure off of the ankle when he walked, and he did not see any reason to tell Lewis that he should not use the cane anymore.
 

 [7]
 

 . See our discussion of Lewis’s answer to the appeal below.
 

 [8]
 

 . Nor are we persuaded by Temple Inland's argument that Lewis's failed attempt to return to his pre-injury job, which exceeded his physical restrictions, somehow demonstrated an intent to withdraw from the workforce.
 

 [9]
 

 . When the appellate court notices an absolute nullity, the court is likewise empowered to vacate or correct the judgment on its own motion.
 
 See Mack v. Wiley,
 
 2007-2344 (La.App. 1st Cir.5/2/08), 991 So.2d 479, 486,
 
 writ denied,
 
 2008-1181 (La.9/19/08), 992 So.2d 932;
 
 see also Winder v. George,
 
 2007-0314, p. 5 & n. 6 (La.App. 1st Cir. 12/21/07), 2007 WL 4532139 (unpublished) (Pursuant to LSA-C.C.P. art. 2164 the appellate court is authorized to render a judgment “which is just, legal, and proper upon the record on appeal.” Thus, pursuant to that authority, the court therein amended a judgment to vacate the absolutely null portion.).
 

 [10]
 

 . In doing so, we further note that on the record before us, although Temple Inland filed its brief and made its arguments on behalf of "the defendants,” Chapman and Winstead do not appear to have been named as defendants nor, does the record clearly reflect they were served with a copy of Lewis's claim. Thus, by our opinion herein, we do not address the procedural or jurisdictional issues that would arise if enforcement of the civil penalties were attempted solely against individuals who were not made parties to the proceeding.
 
 See Phillips v. Lowe's Home Center, Inc.,
 
 2003-0660 (La.App. 1st Cir. 4/28/04), 879 So.2d 200, 203-204 & n. 6.